**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SIMPSON VENTURES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MID-WEST METAL PRODUCTS** | ) | |
| **COMPANY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | **Civil Action No. 3:06-cv-901 WKW** |
| | ) | |
| | ) | **Demand for Jury Trial** |
| **MID-WEST METAL PRODUCTS** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Counterclaimant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SIMPSON VENTURES, INC.,** | ) | |
| | ) | |
| **Counterdefendant.** | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF COURT'S**
**ORDER GRANTING IN PART DEFENDANT MID-WEST METAL'S**
**MOTION TO COMPEL**
**AND**
**OPPOSITION TO DEFENDANT MID-WEST METAL'S**
**MOTION FOR EXTENSION OF TIME**

COMES NOW, Plaintiff Simpson Ventures, Inc. ("Simpson"), by and through counsel, and does hereby respectfully request the following:

(1)    That the Court reconsider and reverse the Amended Order of August 1, 2007, granting in part Defendant Mid-West Metal Products Company's ("Mid-West") Motion to Compel Plaintiff Simpson to respond to Interrogatory Numbers 14-28; and

(2)    That the Court deny Mid-West's Motion for Extension of Expert Disclosure Deadlines.

As grounds therefor, the Plaintiff respectfully submits the following:

## I. DEFENDANT MID-WEST HAS SUBMITTED WELL IN EXCESS OF 30 INTERROGATORIES, IN LIGHT OF THE JURISPRUDENCE INTERPRETING "DISCRETE SUBPARTS" IN RELATION TO FRCP 33(A)

In support of these Motions, Plaintiff Simpson submits the following:

1.     The parties filed their Rule 26(f) Report of the Parties Planning Meeting on January 26, 2007, in which both parties agreed to submit a "maximum of 30 interrogatories, including subparts, by each party to any other party."

2.     On June 4, 2007, Plaintiff Simpson received Defendant Mid-West's first set of interrogatories, Defendant Mid-West's interrogatories numbered 1 through 28.

3.     As the Defendant has stated, Simpson's responses to Mid-West's interrogatories were originally due by July 9, 2007.  On or about June 29, 2007, Mid-West Metal did agree to an 11-day extension of time to respond, whereby Simpson's responses were not due until July 20, 2007, and the parties agreed to further extend Simpson's deadline to July 23, 2007.  However, this extension was merely **reciprocal for Simpson's consent to Mid-West's request** for an extension of time.  A true and accurate copy of the email chain demonstrating these circumstances is attached hereto as **Exhibit A**.  It would have been inappropriate to grant Mid-West leave to respond to Simpson's interrogatories after Simpson's deadline to respond to Mid-West's interrogatories had passed.  Thus, it is disingenuous for Mid-West to imply that Simpson has not been cooperative in accommodating previous requests for additional time.

4.     Plaintiff Simpson submitted responses to Mid-West's interrogatories on July 23, 2007, as required.  A true and correct copy of those interrogatories and responses are attached hereto as **Exhibit B**.

5.     Under the mutually agreed upon Rule 26(f) Planning Report, Plaintiff Simpson was only required to submit responses to 30 interrogatories, including subparts. Plaintiff Simpson has fully complied with this requirement in answering Defendant Mid-West's interrogatories 1-13, which incorporate at least 30 subparts.

6.    Upon the examination of the interrogatories submitted by Defendant Mid-West, it is clear that many or all of the numbered interrogatories include one or more discrete subparts as defined by FRCP 33(a) and relevant case law.

7.    Plaintiff Simpson disputes Defendant Mid-West's contention that an "overly rigid and hypertechnical" standard was applied in determining the definition of "discrete subparts." Quite to the contrary, Plaintiff conservatively responded to more interrogatories and subparts than was necessary under FRCP 33(a).

a.  **Defendant's Arguments in Support of Requiring Plaintiff to Answer Defendant's Overly Numerous Interrogatories are Without Merit**

8.    Like the Defendant, Plaintiff has been unable to find a case reported where this Court has decided this particular subparts issue. Defendant, however, has failed to cite to the abundant case law outside of this Court's district that is instructive to this issue. Instead, Defendant Mid-West relies on only *one isolated case* (which has since been distinguished) to defend their numerous and voluminous subparts. Defendants rely only on Ginn v. Gemini, a 1991 case where the District Court of Nevada was merely applying a Local Rule.    Ginn v. Gemini, Inc., 137 F.R.D. 320 (D. Nev. 1991). Jurisprudence has handled this issue in abundance since 1991, and even more so since the December 1, 1993 amendments to FRCP 33, which *specifically addressed* subparts. However Ginn only once references the **old** FRCP 33 – albeit in a footnote – and only then because the FRCP 33 was referenced in the cited Nevada Local Rule. In the instant case, there is no local rule to interpret. Ginn has also been reinterpreted and expounded upon in that same district, post-amendment to FRCP 33(a), in the oft-cited Kendall v. GES Exposition Services, 174 F.R.D. 684 (D. Nev. 1997).

9.    The meaning of "discrete subparts" in FRCP 33(a) has been the subject of several district court cases across the United States. Instead of referring to the substantial jurisprudence on this particular issue, Defendant Mid-West instead provides the Court with their cherry-picked definition for "discrete" from the New Oxford American Dictionary. *See* Paragraph 9 of Mid-West's Motion to Compel.

10.    Further, Defendant has articulated in Paragraph 10 of Mid-West's Motion to Compel several defenses to their numerous subparts, without reference to case law or

supporting evidence.  There is however, as previously stated, a history and precedent across most circuits as to how district courts address this issue, which is contrary to this Court's Order Granting Mid-West's Motion to Compel.  Many of the districts have taken pointers from key cases from Nevada, where as early as 1991 courts started interpreting Nevada Local Rule 190(c), which limited interrogatories under FRCP 33 to "40, including subparts."  As a result of these earlier cases, district courts across the country now dealing with numerosity objections (and the statutorily undefined meaning of "discrete subparts" in FRCP 33(a)) often turn to these "seminal" cases.

### b.  Applicable Case Law Regarding FRCP 33(a) and "Distinct Subparts"

11.    The initial case to address this issue was <u>Valdez</u>, wherein the court interpreted the "plain meaning" of LR 190(c)'s "including subparts" to mean that each and every subpart was to be counted.  <u>Valdez v. Ford Motor Co.</u>, 134 F.R.D. 296 (D. Nev. 1991).  The decision in <u>Ginn</u> that Mid-West cites criticized this approach a few months later, holding that "interrogatory subparts are to be counted as part of but one interrogatory for the purpose of Local Rule 190, subd. 1(c) if they are logically or factually subsumed within and necessarily related to the primary question." <u>Ginn v. Gemini Inc.</u>, 137 F.R.D. 320, 22 (D.Nev. 1991).

12.    Subsequent to the extreme of <u>Valdez</u>, the ambiguous language of <u>Ginn</u>, and the 1993 amendment to FRCP 33(a), the same district court issued the opinion in <u>Kendall</u>.  <u>Kendall v. GES Exposition Servs.</u>, 174 F.R.D. 684 (D. Nev. 1997)  In <u>Kendall</u>, the court took the <u>Ginn</u> test and explained its proper application, worthy of excerpt below:

> [T]he more difficult question is determining whether the subparts are "logically or factually subsumed within and necessarily related to the primary question." If the questions are relevant to the case, it could be argued that all the interrogatories are "related." If that were the case, then all the interrogatories would only be counted as one and there could never be an excessive number. By the same token, the mere inclusion of "and" or "also" in a question (or double question) does not automatically mean the questions are separate or "discrete" and not subsumed within the initial or primary question.

4

> *Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related.*

*Id.* at 685-6.

For further edification, the court even included examples. *Id.* Perhaps this is why what has subsequently been referred to as the <u>Kendall</u> test has become so often cited and applied across district courts. *See generally,* **Second Circuit**, <u>New Colt Holding Corp. v. RJG Holdings of Fla., Inc.</u>, 2003 U.S. Dist. LEXIS 17930 (D. Conn. 2003); **Third Circuit**, <u>Nyfield v. V.I. Tel. Corp.</u>, 200 F.R.D. 246, 247-248 (D.V.I. 2001); **Fourth Circuit**, <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 54 Fed. R. Serv. 3d (Callaghan) 1057 (W.D. Va. 2002); **Fifth Circuit**, <u>Dimitrijevic v. TV&C GP Holding Inc.</u>, 2005 U.S. Dist. LEXIS 41399, 7-8 (S.D. Tex. 2005), <u>Krawczyk v. City of Dallas</u>, 2004 U.S. Dist. LEXIS 30011 (N.D. Tex. 2004), <u>Estate of Manship v. United States</u>, 232 F.R.D. 552, 555 (D. La. 2005), **Sixth Circuit**, <u>Medtronic Sofamor Danek, Inc. v. Michelson</u>, 2002 U.S. Dist. LEXIS 27981 (W.D. Tenn. 2002); **Seventh Circuit**, <u>Talevski v. Carter</u>, 2007 U.S. Dist. LEXIS 44794 (N.D. Ind. 2007), <u>Bell v. Woodward Governor Co.</u>, 2005 U.S. Dist. LEXIS 12969 (N.D. Ill. 2005); **Ninth Circuit**, <u>Zamora v. D'Arrigo Bros. Co.</u>, 2006 U.S. Dist. LEXIS 21208 (N.D. Cal. 2006), <u>White v. Cinemark USA, Inc.</u>, 2005 U.S. Dist. LEXIS 41809 (E.D. Cal. 2005); **Tenth Circuit**, <u>Kovacs v. Hershey Co.</u>, 2006 U.S. Dist. LEXIS 48138 (D. Colo. 2006); **Eleventh Circuit**, <u>Larson v. Correct Craft, Inc.</u>, 2006 U.S. Dist. LEXIS 78028 (M.D. Fla. 2006). Not surprisingly, courts applying the less subjective <u>Kendall</u> test tend to more often than not find that the subparts should count as a separate interrogatory. *Id.*

13.    Other districts, primarily in the First, Eighth (and particularly) Tenth Circuits, prefer to apply tests that are more subjective, such as the "common theme" test articulated in <u>Williams v. Board of County Comm'rs</u>, 192 F.R.D. 698 (D. Kan. 2000). The <u>Williams</u> court introduced the phrase "common theme" into jurisprudence on FRCP 33(a) through its reliance on § 2168.1 of Wright, Miller & Marcus, *Federal Practice and*

*Procedure.*[1]  But even applying this nebulous test, the <u>Williams</u> court still found multiple subparts (117).  The court in <u>Williams</u> reasoned:

> *"[i]nterrogatories often contain subparts. Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory."*

*Id.* at 701.

14.    Subsequent applications of the "common theme" test have illustrated its potentially random and subjective application, as well as its frequent failure to identify any subpart as discrete.  <u>Dimitrijevic v. TV&C.</u>, 2005 U.S. Dist. LEXIS 41399, 5-6. (S.D. Tex.)(applying <u>Kendall</u>, and calling it the "full and complete answer" standard).  As the court in <u>Dimitrijevic</u> put it, "[a]ny mildly creative lawyer can invent a rubric sufficiently elastic to cover the most disparate of topics," thereby creating a "common theme" broad enough to encompass the entire interrogatory. *Id.*

15.    Plaintiff believes that they have correctly applied this case law in counting the correct number of discrete subparts.  In addition to <u>Kendall</u>, Plaintiffs would like to point out to the Court that at least one other neighboring state, Mississippi, has local rules that specifically address the counting of interrogatories.[2]  Plaintiff urges this Court in reconsidering its Order to Grant In Part Defendant's Motion to Compel to apply the <u>Kendall</u> test in evaluating the number of subparts of the Defendant's interrogatories.

### c. **Simpson Ventures Did Not Waive its Right To Object To the Numerosity of Defendant Mid-West Metal's Interrogatories**

---

[1] "It would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable. On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation." <u>Williams v. Board of County Comm'rs</u>, 192 F.R.D. 698, 701 (D. Kan. 2000)(citing 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1, at 261 (2d ed. 1994)).

[2] "In computation of the number of interrogatories or requests propounded, each subpart of a question shall be counted as a separate interrogatory or request." *Uniform Local Rules for the Northern and Southern District of Mississippi*, Rule 26.1(D).

16.     Simpson Ventures did not pick and choose which interrogatories to answer, it simply answered at least the first "30 Interrogatories, including subparts" as set forth in the Rule 26 Planning Report filed with the Court.  Simpson Ventures provided adequate and timely answers to at least the first 30 interrogatories posed by Mid-West, and raised a timely objection to the remainder.

This practice is advocated by *Moore's Federal Practice*, §33.30[1] (2003):

> *It appears that when a party is served with interrogatories in excess of the numerical limits, the party may answer the first 25, and object to the remainder (citing* Valdez v. Ford Motor Co.*, 134 F.R.D. 296, 97 (D. Nev. 1991)).*

And also:

> *[T]he better rule is to require the responding party to answer the first 25 interrogatories and object to the remainder (citing* Capacchione v. Charlotte-Mecklenburg School*, 182 F.R.D. 486, 492 n4 (W.D.N.C. 1998)).*

*Moore's* at §33.30[1].  In the same section, *Moore's* also points out that it would be "improper" to for a party to select which interrogatories to answer when there are more than 25 interrogatories submitted, which Plaintiff did not do in the case at hand.  *Id.*

17.     Mid-West cites Allahverdi for the proposition that a party responding to interrogatories waives its right to object to numerosity by answering some interrogatories and not first filing a motion for a protective order or objecting to all the interrogatories. Allahverdi v. Regents of Univ. of New Mexico, 228 F.R.D. 696 (D. N.M. 2005).  The Defendant's reliance on Allahverdi as the state of the law is clearly misplaced.  It is virtually impossible to analogize Allahverdi to the instant case.  Nowhere in the opinion does the court disclose the number of interrogatories or subparts.  Nor does the court go into any detail about the interrogatories themselves, or the test applied to determine the court's analysis.  Instead the court dismisses Allahverdi's apparent oversight in exceeding FRCP 33 as "good faith" and declines to "equitably adjust the number" of interrogatories for the defendants to answer.  *Id.* at 698.  Moreover, later decisions have departed significantly from Allahverdi.

18.     Subsequent cases have admonished the lack of case law and references to the Federal Rules for the very same proposition Mid-West cites from Allahverdi.  For

example, in <u>Talevski v. Carter</u>, 2007 U.S. Dist. LEXIS 44794 (N.D. Ind. 2007), the court addresses a fact pattern highly analogous to the instant case. The plaintiff objected to the numerosity of the defendant's interrogatories, and ceased answering at interrogatory 15, contending that the first 15 interrogatories with subparts equaled 30. *Id.* at 12. The defendants in <u>Talevski</u> then countered that the plaintiff waived his objection to the number of interrogatories by answering some and not others. *Id.* The court singularly dismissed this argument, and the defendant's reliance on <u>Allahverdi</u>: "The single case the defendants rely upon states this proposition without reference to any case or language within the federal rules…" *Id.* at 13.

### d. <u>Simpson Ventures Was Not Obligated by Any Federal or Local Rule to Move for a Protective Order in Light of the Overly Numerous Interrogatories Served by Mid-West</u>

19. First, the *Guidelines to Civil Discovery Practice in the Middle District of Alabama* are just that – guidelines. While Plaintiff surely respects the Guidelines set forth by this Court, they are not mandatory. Moreover, the cited language from the guidelines is <u>permissive</u>, not exclusive, in terms of how a party should respond to overly numerous interrogatories. Mid-West cited the following from the *Guidelines to Civil Discovery Practice*:

> *If a party considers the number or breadth of interrogatories to be burdensome in the context of a particular case, it may of course move to a protective order.*

*Id.* at §IV(A), cited at *Defendant's Motion to Compel* page 5.

Mid-West added emphasis to the above quote by underlining "move to a protective order". Mid-West's emphasis is misplaced; if emphasis is needed anywhere it would be on the word "may." Further, Mid-West asserts that "Simpson Ventures ***should*** have moved for a protective order," as if instead of the word "***may***" the Court's Guidelines said "shall" or "must". *Emphasis added.* That is not the case. If parties are required to immediately move for protective orders upon receiving overly numerous interrogatories, rather than objecting and seeking to resolve the issue without burdening

the court, the result will be more motions clogging the Court's docket and wasting court resources.

20.     Second, the Court's Guidelines at §IV(A) address situations where a party finds interrogatories to be *burdensome*, rather than overly numerous. Simpson Ventures objected generally that the Defendant's instructions and definitions "would impose a duty … that would exceed the permissible scope of discovery under Rule 26 of the Federal Rules of Civil Procedure." *See* Plaintiff Simpson Venture's Answers to First Set of Interrogatories from Defendant Mid-West, pg. 3. In Simpson Venture's objections to Defendant's Interrogatories 14-28, the specific objection (notwithstanding general objections) was that Mid-West was far in excess of the agreed upon 30 interrogatories, including subparts, which was stipulated in the Report of the Parties' Planning filed with this Court.

**e.   The parties mutually agreed to limit the number of Interrogatories to 30 questions, including subparts, and the Court should hold the Defendant to that number**

21.     Simpson Ventures answered the interrogatories posed by the Defendant in an adequate and timely manner. Allowing the Defendant to now take leave to serve additional interrogatories on the Plaintiff would not only delay the discovery process, but would allow Defendant Mid-West a second bite at the apple, and an unfair advantage in discovery. Both parties agreed to limit their number of interrogatories in the interest of both time and money. Simpson Ventures chose carefully which questions to pose to the Defendant based on the mutually agreed-upon limit on interrogatories, *including subparts*. To allow Mid-West free reign to submit interrogatories ad nauseum would not treat the parties in an equitable fashion. Moreover, Simpson Ventures has already answered at least the first 30 interrogatories posed by Mid-West. To allow Mid-West additional interrogatories would place an undue burden on Simpson Ventures in both time and money.

22.     Mid-West contends that the parties, instead of choosing a separate schedule for claims construction, "chose to attempt to address these issues through the normal avenues of written discovery." Simpson Ventures asks the Court: If this were truly the case, and Mid-West truly needed so many interrogatories, why ever would they

agree to limit interrogatories to 30, including subparts?  Regardless of the fact that this case centers on a patent, Mid-West is not entitled to any particular special treatment to accommodate their expansive list of interrogatories that are clearly in violation of the mutually agreed to Planning Report.  Moreover, the patent-in-suit is a design patent with a single claim, not a utility patent with dozens of claims.

## II.  THIS COURT SHOULD DENY DEFENDANT MID-WEST'S MOTION FOR EXTENSION OF EXPERT DISCLOSURE DEADLINES

23.    According to the Planning Report submitted to the Court as of January 26, 2007, the parties mutually agreed that Defendant Mid-West's expert disclosures were due on July 25, 2007.

24.    On May 22, 2007 this Court issued a Uniform Scheduling Order, in which this Court imposed the July 25, 2007 deadline for Mid-West's to submit all expert disclosures.

25.    Therefore, the Defendant knew at least as early as January 26, 2007 that Defendant Mid-West's expert disclosures were due on or before July 25, 2007.

26.    On or about July 18, 2007, *merely seven days before* the impending July 25, 2007 deadline, Mid-West contacted Plaintiff Simpson and requested a lengthy *30-day* extension to submit Mid-West's expert disclosures.  Despite Mid-West's characterization that Plaintiff Simpson is somehow being unfair, Plaintiff Simpson graciously responded by granting Defendant Mid-West a 21-day extension for all damages/financial expert disclosures and a seven-day extension for all liability/technical expert disclosures.  A true and accurate copy of the correspondence between the counsel for Simpson and Mid-West is attached hereto as **Exhibit C.**  Simpson notes that it was under no obligation to accommodate Mid-West's extraneous eleventh hour request, but still granted the Defendant an extension on the basis of professional courtesy.

27.    In responding to the extension request by Defendant Mid-West, Plaintiff Simpson noted several reasons for denying a blanket 30-day extension, including the fact that discovery is set to close on September 30, 2007 and Simpson has no desire to extend the current discovery period.  Additionally, Simpson noted that Mid-West had been in possession of Simpson's technical expert report for many months, since at least as early

as January 10, 2007. A true and correct copy of the letter accompanying Plaintiff Simpson's expert report to Defendant Mid-West is attached hereto as **Exhibit D.** Considering that the Defendant had possessed the Plaintiff's technical report for over seven months, Plaintiff was reluctant to grant *any extension* of time to submit technical/liability expert disclosures after the agreed upon July 25, 2007 deadline. Because the Defendant was in possession of the Plaintiff's damages report for a much shorter period of time, Plaintiff was more sympathetic to granting a lengthier extension (which was granted and communicated to Defendant Mid-West).

28.    The mere fact that Defendant Mid-West approached Plaintiff Simpson seven days before the expert disclosure deadline and demanded no less than a 30-day extension causes significant suspicion for the Plaintiff, namely that the Defendant has not been able to find an expert "friendly" to the Defendant's position and/or the Defendant has not been diligent.

29.    The Defendant has stated that there would be no prejudice to either party if the Court were to grant the Defendant's request for an extension of time. This is clearly not the case. If the Defendant Mid-West does indeed have a meritorious defense to Plaintiff's infringement allegations (which Plaintiff does not believe to be the case) it should be disclosed to the Plaintiff sooner, rather than later, in order to allow the parties to evaluate the case, consider settlement options, and potentially minimize excessive litigation costs and conserve the resources of this Court.

30.    Moreover, if Defendant's requested extension is granted, Plaintiff likely will not have sufficient time to depose Defendant's expert and conduct any necessary follow-up discovery before the expiration of the discovery period. Thus, Plaintiff would clearly be unfairly prejudiced by the requested extension.

31.    Defendant Mid-West has petitioned this court to grant additional time to submit its Expert Disclosures, based largely on the premise that Simpson has inappropriately failed to respond to Defendant's interrogatories numbered 14-28. As noted above, Plaintiff Simpson vigorously denies that Simpson is required to respond to Defendant's interrogatories numbered 14-28, as they clearly exceed the limit of 30 interrogatories that the parties mutually agreed to. On this basis alone, Defendant's Motion should be denied.

32.     Regardless of this Court's ruling regarding Mid-West's Motion to Compel, the Defendant's request for an extension of time should be denied for additional reasons, as set forth below.

**a.     Defendant Mid-West Simply Does Not Need Additional Time to Submit its Expert Disclosures**

33.     The Defendant has stated that their technical/liability experts need to review Simpson's responses to Mid-West's interrogatories before the experts could complete their analysis of the Infringement allegations at hand  (See Page 8, Paragraph 19 of the Defendant's Motion to Compel).  This simply is not true.  First, to the extent Defendant's expert's opinion supports Mid-West's position, it should be based on that expert's analysis of the patent-in-suit and the accused device, which does not require reference to the Plaintiff's discovery responses.  Furthermore, it is well established that any infringement analysis should contain two steps: (1) determine the meaning and scope of the patent claims asserted to be infringed, and (2) compare the construed claims to the device accused of infringement.  Markman v. Westview Instruments, Inc., 52 F. 3d 967, 976 (Fed. Cir. 1995)(citing Read Corp., 970 F. 2d at 821), *Affirmed by* Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).  Second, to the extent that the Defendant's technical expert's opinion is in rebuttal to the Plaintiff's expert, Defendant has had Plaintiff's expert's report for over seven months now.

34.     To the extent Plaintiff believed that Mid-West's technical expert could narrowly miss completing their report by the July 25, 2007 deadline, Plaintiff Simpson granted Mid-West an additional seven days to conclude this work—as a professional courtesy.  To the extent that Mid-West's damage expert was prejudiced by the earlier discovery extensions (again at the bequest of the Defendant) the Plaintiff additionally granted Mid-West an additional 21 days to submit damages expert disclosures.  Mid-West simply does not need any additional time to comply with the current expert disclosures deadlines.

35.     The Defendant has had in its possession a copy of the Plaintiff's technical expert report for over seven months and has known about the July 25, 2007 deadline at least as early as January 26, 2007.  This is ample time for the Defendant to find and

secure a technical/liability expert, and ample time for the expert to produce an adequate report. The Plaintiff is left to assume that the Defendant was not diligent in this effort and/or has not been able to find an expert to agree with the Defendant's position. Either way, the Defendant's circumstances do not demonstrate an actual ***need*** for an extension of time to comply with the deadline to submit expert disclosures.

36.    As noted above, the ***Defendant initiated*** the previous discovery extensions (see **Exhibit A**) on or about June 28, 2007. Despite that the fact that these extensions were initiated less than 30 days from the Defendant's expert disclosure deadlines, no request for an extension of time regarding the same was made until merely seven days before the deadline—whereby the Defendant requested an additional *30-day* extension.

37.    The Plaintiff has already agreed to give Defendant a reasonable extension, on its own initiative, of seven days to submit all technical expert disclosures, and 21 days to submit all damages expert disclosures.

38.    The Defendant's present Motion for Extension of Expert Disclosure Deadlines is the latest in a series of excuses as to why the Defendants need additional time to submit their expert disclosures. As mentioned, the Defendant originally requested a 30-day extension from the Plaintiff (See **Exhibit C**). In fact, the Defendant originally stated that they could accept nothing less than a 30-day extension. However, after Simpson denied Mid-West the 30-day extension, and instead offered seven and 21-day extensions, Mid-West stated that they could "work with" a 15-day extension for the technical expert disclosures. Mid-West later commented that the additional two weeks that they had additionally requested, and "had to have", were set aside to accommodate Mid-West counsel's schedule, Mid-West's schedule, and their expert's schedule, "particularly as summer ends, and school schedules start." Eventually, the parties agreed to the seven and 21-day extensions. Despite the parties agreement to extend the expert disclosure deadlines by seven and 21 days, the Defendant filed this request seeking a further extension of these deadlines as soon as the first of these extended deadlines drew near.

39.    As it can be seen, the Defendant has already had more than adequate time to complete and submit Defendant's expert disclosures. Additionally, it can be seen that that Plaintiff has already been extremely accommodating in granting extensions for the

Defendant. The Defendant simply does not need this Court to further extend these deadlines, and doing so will unfairly prejudice the Plaintiff.

WHEREFORE, the Plaintiff respectfully requests that the Court:

(1)    reconsider and reverse the Amended Order of August 1, 2007 granting in part Defendant Mid-West Metal Products Company's ("Mid-West") Motion to Compel Plaintiff Simpson to respond to Interrogatory Numbers 14-28; and

(2)    deny Mid-West's Motion for Extension of Expert Disclosure Deadlines.

Respectfully submitted,

*/s/ Robert T. Meadows, III*_____
Robert T. Meadows, III
Alabama Bar No. MEA012
One of the Attorneys for Plaintiff SIMPSON
VENTURES, INC.

OF COUNSEL

CAPELL & HOWARD, P.C.
3120 B. Frederick Road (36801)
P.O. Drawer 2268
Opelika, Alabama 36803
334.501.1540 (ph)
334.501.4512 (fax)

OF COUNSEL

Arthur A. Gardner
agardner@gardnergroff.com
GARDNER GROFF SANTOS & GREENWALD, PC
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
770.984.2300 (ph)
770.984.0098 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following on this 2nd day of August, 2007:

Brett A. Ross
Gregory A. Brockwell
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama 35216
bar@carrallison.com
gab@carrallison.com

Pro Hac Vice:

James M. Hinshaw
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, Indiana 46204-4900

Attorneys for Defendant Mid-West Metal Products Company, Inc.

/s/ Robert T. Meadows, III
Robert T.  Meadows, III
Alabama Bar No. MEA012
One of the Attorneys for Plaintiff SIMPSON
VENTURES, INC.

### Groff, Brad

| | |
|---|---|
| **From:** | Gardner, Art |
| **Sent:** | Friday, June 29, 2007 1:54 PM |
| **To:** | JHinshaw@binghammchale.com |
| **Subject:** | RE: Mid-West Metal (`156 Patent) |

James,

The extra day is okay as mentioned in your email below.

With best regards, I remain,
very truly yours,

*Art Gardner*

---

**From:** James M Hinshaw [mailto:JHinshaw@binghammchale.com]
**Sent:** Friday, June 29, 2007 8:58 AM
**To:** Gardner, Art
**Subject:** RE: Mid-West Metal (`156 Patent)

Art - Great. Thanks. Yes, I have no problem with your requested extension to the 19th. As for my due date, I am tied up on the 12th - which is why I had asked for the 13th. Let me know if that 1 day difference is a problem for you. If you want an additional day (to the 20th) to make it reciprocal, I don't have any problem with that. I will forward you electronics of our requests. My secretary is out today, so look for those late next week. Thanks. - James -

-----Original Message-----
**From:** Gardner, Art [mailto:agardner@gardnergroff.com]
**Sent:** Thursday, June 28, 2007 5:48 PM
**To:** James M Hinshaw
**Subject:** RE: Mid-West Metal (`156 Patent)

James,
I am okay with an extension, provided that Simpson would get a reciprocal extension on the discovery responses we owe you. I would prefer to keep the extension as short as practical, perhaps at just a week, but I see that such could make for a very difficult week for you next week. So let's make it a 10 day extension, making your response due on the 12th. I believe we owe you interrogatory answers and documents on the 9th and would propose to move those back to the 19th. We too have been working on the responses, but it seems only appropriate to make this reciprocal. Please confirm that you are agreeable to this.
Speaking of responses, I will send you electronic (Word) versions of the interrogatories and requests we have served on you to facilitate the preparation of your responses. Please send me the same from your end.

Exhibit A

With best regards, I remain,
very truly yours,

*Art Gardner*

---

**From:** James M Hinshaw [mailto:JHinshaw@binghammchale.com]
**Sent:** Thursday, June 28, 2007 5:33 PM
**To:** Gardner, Art
**Subject:** Mid-West Metal (`156 Patent)

Hi Art. I show that I owe you IROG responses on Monday (July 2). We are far along in responding to those, but I am afraid that I won't have them wrapped up by then - and am out of the state Monday through Wednesday next week. Please let me know if you will agree to a short extension for our responses - to July 13. Thank you. - James -


- James M. Hinshaw -
BINGHAM McHALE, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900
(317) 968-5385
*jhinshaw@binghammchale.com*
www.binghammchale.com


CONFIDENTIALITY NOTICE:
This e-mail contains information that is privileged, confidential
and subject to legal restrictions and penalties regarding
its unauthorized disclosure or other use. You are prohibited from
copying, distributing or otherwise using this information if you are
not the intended recipient. If you have received this e-mail in error,
please notify us immediately by return e-mail and delete this email
and all attachments from your system. Thank you.

DISCLOSURE REQUIRED BY CIRCULAR 230.
This Disclosure may be required by Circular 230 issued by the
Department of Treasury and the Internal Revenue Service. If this
e-mail, including any attachments, contains any federal tax advice,
such advice is not intended or written by the practitioner to be used,
and it may not be used by any taxpayer, for the purpose of avoiding
penalties that may be imposed on the taxpayer. Furthermore, any
federal tax advice herein (including any attachment hereto) may not
be used or referred to in promoting, marketing or recommending a
transaction or arrangement to another party. Further information
concerning this disclosure, and the reasons for such disclosure,
may be obtained upon request from the author of this e-mail. Thank you.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## <u>EASTERN DIVISION</u>

| | |
|---|---|
| SIMPSON VENTURES, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Act File No. 3:06-cv-901 WKW |
| ) | |
| v. ) | **Demand for Jury Trial** |
| ) | |
| MID-WEST METAL ) | |
| PRODUCTS ) | |
| COMPANY, INC. ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| ) | |
| MID-WEST METAL ) | |
| PRODUCTS ) | |
| COMPANY, INC., ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| SIMPSON VENTURES, INC., ) | |
| ) | |
| Counterdefendant. ) | |
| _____) | |

## PLAINTIFF SIMPSON VENTURE'S ANSWERS TO FIRST SET OF
## <u>INTERROGATORIES FROM DEFENDANT MID-WEST METAL</u>

COMES NOW, Plaintiff Simpson, and for its answers to Defendant's First Set of Interrogatories, states as follows:

## <u>GENERAL STATEMENT AND OBJECTIONS</u>

Exhibit B

Plaintiff Simpson has not concluded its investigation into the facts relating to this case, its formal discovery, or its preparation for trial. These answers represent said Plaintiff's reasonable effort to provide the information requested based upon information in its possession, custody or control, and based upon its current knowledge. Plaintiff reserves the right to produce information regarding subsequently discovered facts, to alter or amend these responses as set forth herein, and otherwise to assert factual and legal contentions as additional facts are ascertained, analyses are made and legal research completed.

Plaintiff objects to each and every Interrogatory insofar as it may be construed as limiting or restricting its right to rely upon any document or information for any purpose whatsoever, including but not limited to the use of responsive documents or information as evidence at any subsequent hearing, trial or proceeding.

Plaintiff objects to Defendant's First Set of Interrogatories in its entirety to the extent it seeks information or documents protected by any applicable privilege, including but not limited to the attorney/client privilege, the work product doctrine, the investigative and party communication privileges, and any other applicable privilege or exemption from discovery as outlined in the Federal Rules of Civil Procedure and applicable law, and Plaintiff hereby asserts such privileges and/or exemptions. Specifically, and without limiting the foregoing, letters, memoranda and other writings transmitted by or between Plaintiff and its counsel, or writing prepared and maintained internally by Plaintiff's counsel that have not been disclosed to third parties, are not included in these Answers.

Plaintiff will make reasonable efforts to respond to each Interrogatory, to the extent that no objection is made, as Plaintiff understands or interprets the Interrogatory.  If Defendant or other parties hereto subsequently asserts any other interpretation or otherwise clarifies any of these Interrogatories at variance to Plaintiff's interpretation thereof, Plaintiff reserves the right to supplement or modify these Objections and Answers.

Plaintiff further objects to Defendant's instructions and definitions to the extent that the same seeks to impose a duty on this Plaintiff that would exceed the permissible scope of discovery under Rule 26 of the Federal Rules of Civil Procedure.

Many of the documents and responses requested concern matters protectable under the attorney-client privilege and/or the work product doctrine.  Rather than to object and refer to these privileged matters question by question, a list of withheld documents will be produced with appropriate identification in accordance with the requirements of the Federal Rules of Civil Procedure after production of the discoverable documents is complete.

Subject to, and without waiving, the foregoing objections, Plaintiff answers as follows:

3

**1.**    Identify all witnesses, including expert witnesses, who will be called to testify in support of Simpson Venture's claims in this action.  For each, state the nature and substance of the testimony which is expected to be given by each such witness, and state the relationship, if any, to the Plaintiff.

**RESPONSE:**

Objection.  Plaintiff objects to this interrogatory as premature and calling for protected work product.  Moreover, discovery is ongoing and the Plaintiff's investigation into this matter continues and as such Plaintiff does not now know what witnesses it will or may use at trial. Pursuant to the Court's order, prior to the trial, the parties are to exchange witness lists as part of the pre-trial order.  Thus, this requested information is premature and duplicative of the information to be produced as part of the pre-trial order.

Subject to the above objection, Plaintiff responds as follows:

**Mr. Robert Anders**
A Design Consultancy of Warwick, N.Y.
78 Continental Road
P.O. Box 609
Warwick, N.Y.  10990-0609

Mr. Anders is expected to testify as to the design patent and infringement thereof.

Mr. Anders is not related to Plaintiff Simpson Ventures.


**Mr. Mark Gallagher**
Duff & Phelps
10 Tenth Street, Suite 1030
Atlanta, GA  30309

Mr. Gallagher is expected to testify as to the damages and financial matters.

Mr. Gallagher is not related to Plaintiff Simpson Ventures.

**Mr. Jeff Simpson**
President
Simpson Ventures, Inc.
480 N. Dean Rd., Suite E
Auburn, AL  36830

Mr. Simpson is expected to testify about the conception of the invention, the '156 Patent, the construction and appearance of the Defendant's products; the impact of Defendant's entry into the market on Plaintiff Simpson, and other matters, inter alia.

Mr. Simpson is the patent holder and President of Simpson Ventures, Inc.

**Ms. Kathy Simpson**
Vice President/Treasurer
Simpson Ventures, Inc.
480 N. Dean Rd., Suite E
Auburn, AL  36830

Kathy Simpson may testify about the conception and reduction to practice of the invention, the impact of Defendant's infringement in the market and the history and performance of Simpson Ventures, Inc.

Kathy Simpson is the spouse of patent holder Jeff Simpson and is Vice President/Treasurer of Simpson Ventures, Inc.

**Mr. Bernie Kelley**
Vice President
Vigor International HK Ltd.
3141 Montclair Ave.
Lewis Centre, OH  43035

Mr. Kelley may testify about the prototype development and production thereof of products as shown in the '156 Patent.

Mr. Kelly is the Sourcing Agent for Simpson Ventures, Inc.


**Ms. Donna Belenchia**
Customer Service Mgr.
Simpson Ventures, Inc.
814 Lakeshore Ave.
Opelika, AL  36801

Ms. Belenchia may testify about customer service issues regarding the product shown in the '156 Patent, and about confusion in the market place between Simpson Ventures' products and those of Defendant Mid-West Metal Products.

Ms. Belenchia is the Customer Service Manager for Simpson Ventures, Inc.

**2.**    List specifically and describe in detail each and every exhibit you will or may utilize at the trial in this matter.  This interrogatory is directed both to exhibits you intend to use at trial, and exhibits you may use.

**RESPONSE:**

Objection.  Plaintiff objects to this interrogatory as premature and calling for protected work product.  Moreover, discovery is ongoing and the Plaintiff's investigation into this matter continues and as such Plaintiff does not now know what exhibits it will or may use at trial.  Prior to the trial, the parties are to exchange exhibit lists as part of the pre-trial order.  Thus, this requested information is premature and duplicative of the information to be produced as part of the pre-trial order (and therefore it is unduly burdensome to try to produce such now).  Moreover, even if such a list were to be compiled at this time (with considerable effort), such a list likely would differ substantially from the list of exhibits compiled for the pre-trial.

**3.**    Please identify every person who participated, assisted, or was involved in any way in the creation and/or development of the design that is the subject of the `156 Patent, and describe in detail each person's role in the development and/or creation of that design.

**<u>RESPONSE</u>:**

Jeff Simpson.

Jeff Simpson conceived of and developed the design that is the subject of the '156 patent.  The involvement of others was limited to the fabrication of one or more prototypes at Mr. Simpson's direction.

**4.**    Please describe in detail when and how the claimed invention was conceived, and then reduced to practice. Include in your answer the date when the inventor(s) first conceived of the claimed invention, and state the earliest date it was reduced to practice. Also, include in your answer the dates of the first drawing and written description of the claimed invention.

**RESPONSE**:

Plaintiff objects to this interrogatory as vague and indefinite in that there is no definition of what type of "written description" is referred to in the interrogatory. This could be interpreted to mean any kind of writing that in any way refers to the invention or could be interpreted to mean a detailed, technical description of the various features shown in the '156 Patent. Subject to this objection, Plaintiff answers as follows:

While employed as Director of Marketing at Doskocil Manufacturing Co., Inc. in Arlington TX from 1997 to 1999, the inventor, Jeff Simpson, had a notion that many consumers might not be satisfied with the aesthetic quality of a plastic carrier or wire kennel as an indoor pet containment device. He initiated a project with the Doskocil product development group while at Doskocil to develop indoor containment that replicated indoor occasional furniture. Two prototypes were developed, one of which was in the form of an end table and the other a corner table. The prototypes were

9

fabricated from particle board construction with imitation wood grain melamine surfaces. The project was dropped due primarily to the fact that the articles looked like cheap pieces of knock-down furniture which would most likely not match a consumer's indoor décor.

In late May 2001 Jeff Simpson and Jared Simpson (inventor's son) purchased an outdoor porch swing for Kathy Simpson as a Mother's Day present. The outdoor porch swing was manufactured with a metallic tubular frame and had a woven resin wicker material covering. While employed as a sales and marketing manager for GDA, LLC, in early September 2001 while sitting on the porch swing at his home, Jeff Simpson came up with the concept of a decorative indoor pet home utilizing resin wicker on a steel frame. He felt that an aesthetically pleasing product could be manufactured according to this design.

With the help of GDA, LLC, Mr. Simpson developed a first prototype design for a decorative pet home covered with a woven, wicker-look material. Thereafter, Mr. Simpson left the employ of GDA, LLC and continued to develop his ideas further.

In early 2002 Mr. Simpson continued to develop his decorative pet home design and began marketing the product to potential customers. His business plan was to offer the product to pet catalogs companies, pet distributors and high-end general merchandise catalogs companies, and once

10

the product concept gained acceptance, offer the product line in more mass retail-type settings.  The design shown in the '156 Patent is believed to have been finalized in April or May, 2002 and the first production order was placed in May 2002. The '156 design patent was filed on May 2, 2002.  A subsequent Provisional Utility Patent was filed on July 3, 2002 and Non-provisional Utility Patent filed on July 2, 2003.

The date of the first drawing (or image) of the design shown in the '156 Patent is believed to be sometime in April, 2002.

The date of the first written description of the design shown in the '156 Patent is believed to coincide with the filing of the design patent application in May 2002.

**5.**    Identify all documents and things, including but not limited to patents and printed publications, made known to and/or considered by each person identified in response to Interrogatory #3 in creating, conceiving, and/or developing the design that is the subject of the `156 Patent.

**RESPONSE:**

Plaintiff objects on the basis that the interrogatory is vague, indefinite and overbroad.  For example, at the time that Mr. Simpson conceived of and/or developed the invention shown in the '156 Patent, by that stage in his life he had been made aware of countless documents and things and there is no way of recounting all the documents and things that a person has known of over his lifetime.  On its face the interrogatory is not limited to only those documents and things that Mr. Simpson had in mind at the time of the invention, and so the interrogatory would encompass a lifetime's accumulation of knowledge (even things he had forgotten).  Subject to this objection, Plaintiff responds by identifying documents and things that the inventor was specifically aware of at the time of conceiving and/or developing the invention shown in the '156 Patent as follows.

Plaintiff's investigation into this interrogatory is not complete and Plaintiff declines to provide an incomplete (and perhaps incorrect) answer at this moment.  Plaintiff intends to supplement this response once the

investigation is completed and it is anticipated that the supplemented answer should be forthcoming soon.

**6.**    Please describe in detail the circumstances of the first time that the design that is the subject of the `156 Patent was disclosed to a person who was not an employee or representative of Simpson Ventures. Include in your answer the date, the identity of all persons with knowledge of such, and identify all documents related to such.

**RESPONSE:**

It is believed that the design that is the subject of the '156 Patent was first disclosed to Taresa Perry of Jeffers Pet in Dothan, Alabama.

The date of such initial disclosure is believed to be around March 2002.

The identity of persons believed to have knowledge of such is as follows: Jeff Simpson; Ruth Jeffers; and Taresa Perry.

At this time, Plaintiff Simpson is unaware of any existing documents related to such.

**7.**    Please identify the date on which you first offered for sale any product that embodied the design that is the subject of the `156 Patent.  For that event, please identify all terms and conditions of the offer, describe in detail how it was made or communicated, to whom it was made or communicated, and identify all documents that relate to such.

**<u>RESPONSE</u>:**

To the best of Jeff Simpson's recollection, the first offer for sale of any product that embodied the design of the '156 Patent was an offer to Jeffers Pet on or around March 2002.

The terms of the offer for sale are not recollected at this time.

The offer for sale was made in person by Jeff Simpson and Jeff Simpson no longer has any documents relating to the offer.

The offer for sale was communicated to Ruth Jeffers and/or Taresa Perry of Jeffers Pet.

Jeff Simpson no longer has any records relating to the offer for sale due partly to a computer hard drive crash in July 2004.

     **8.**    For all sales, or offers of sale, of any products that embody the design that is the subject of the `156 Patent, where such sales occurred prior to May 2, 2001, please describe in detail the item sold, identify the seller/offeror and purchaser/offeree, state the date, identify all terms and conditions related to such, identify all documents related to such, and identify all persons with knowledge concerning such.

**RESPONSE**:

    There are no such sales or offers for sale. Thus, Simpson cannot describe in detail the item sold, cannot identify the seller/offeror and purchaser/offeree, cannot state the date of such, cannot identify all terms and conditions related to such, cannot identify all documents related to such, and cannot identify all persons with knowledge concerning such.

**9.**    For all uses of any items or products that embody the design that is the subject of the `156 Patent, where such uses occurred prior to May 2, 2001, please describe in detail the item or product used, describe in detail the nature of the use(s), state the date, identify all documents related to such, and identify all persons with knowledge concerning such.

**RESPONSE**:

There are no such uses.

As there are no such uses, Plaintiff Simpson cannot identify the item or product used, cannot state a date for such, cannot identify documents related to such, and cannot identify persons with knowledge of such.

**10.**    If you contend that sales, offers for sale, disclosures, and/or uses of any embodiments of the design that is the subject of the `156 Patent prior to May 2, 2001, do not constitute sales, offers, disclosures, or public uses that would invalidate the `156 Patent, then please identify in detail all factual and legal bases for that contention, identify all witnesses with knowledge of those facts, and identify each and every document that contains factual information relating to that contention.

**RESPONSE:**

There are no such sales, offers for sale, disclosures, and/or uses prior to May 2, 2001.

As there are no such sales, offers for sale, disclosures, and/or uses, Plaintiff cannot identify factual and legal bases for such a contention, cannot identify knowledgeable witnesses, and cannot identify documents related thereto.

**11.**    Please identify with specificity all "points of novelty" of the design that is the subject of the `156 Patent.  In your response, please itemize and describe with particularly the prior art from which these points of novelty are contended by you to be distinct.

**RESPONSE:**

Objection.    Plaintiff Simpson objects to this interrogatory as premature in that Plaintiff's investigation into this matter is continuing. Furthermore, the interrogatory calls for the identity of <u>all</u> prior art from which the patented design is contended to be distinct, which would encompass all patents and things then in existence.    Subject to these objections, Plaintiff answers as follows.

The points of novelty include a pet home having a woven outer texture with the appearance of wicker, rattan or the like, the woven texture appearing on the top, non-window portions of the sides and rear, and on a non-door portion of the front.

The prior art from which this point of novelty is distinct includes the prior art cited during the prosecution of the '156 Patent.

**12.**    Please identify with specificity all aspects of the design that is the subject of the `156 Patent that are ornamental.

**RESPONSE**:

Objection.    Plaintiff Simpson objects to this interrogatory as premature in that Plaintiff's investigation into this matter is continuing. Subject to this objection, Plaintiff answers as follows.

a.  Overall Ornamental Silhouette.  A box shaped pet home that is longer than it is wide or tall, which includes a woven texture outer surface having the appearance of wicker or rattan.

b.  Overall Ornamental Appearance.  The overall ornamental appearance is of a pet home with a woven texture surface with the appearance of wicker or rattan on some portion or entirety of each of the 5 panels or faces claimed in the '156 Patent.  The front panel has a non-door portion that is covered in a woven wicker-look material and a rectangular door portion, which is not so covered.  The sides are each covered with a woven wicker-look material, except for a window opening that is not so covered.  The rear face is covered with a woven wicker-look material, except for a window opening that is not so covered.

**13.**    Please identify with specificity all aspects of the design that is the subject of the `156 Patent that are functional.

**RESPONSE:**

Objection.    Plaintiff Simpson objects to this interrogatory as premature in that Plaintiff's investigation into this matter is continuing. Subject to this objection, Plaintiff answers as follows.

The functional features include the pet residence or pet home having the following features:

a.  feet for supporting the pet home upon the floor;

b.  a non-covered pivoting door on the front thereof to enable the pet to go into and out of the pet home;

c.  a latch for securing the door in place for securing the pet in the pet home;

d.  non-covered windows formed in the sides and the back;

e. mechanical features along the edges and at the corners thereof for holding the structure together, including fasteners and links;

f. a tray or bottom pan;

g. a tray latch; and

h.  a framework to which the woven wicker-look material is applied.

**14.**    Please describe in detail, and not merely in summary form, each and every difference between the design that is the subject of the `156 Patent, and the Accused Products.

**<u>RESPONSE</u>:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**15.**    Please identify and describe with particularity all studies, surveys and/or polls, and the results therefrom, relating to what an ordinary observer believes, thinks, feels, observes, concludes, etc. when observing the Accused Products in relation to and/or in comparison with the design that is the subject of the `156 Patent.

**<u>RESPONSE</u>:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**16.** Please identify and describe with particularity all products or items that embody or otherwise reduce to practice the design that is the subject of the `156 Patent. Please separately identify these, where appropriate, as (i) products or items that are manufactured by or on behalf of Simpson Ventures; (ii) products or items that are manufactured by third parties but with the permission of Simpson Ventures (including under any license agreement); and (iii) products or items that are manufactured by third parties without the permission of Simpson Ventures (excluding Plaintiff's allegations regarding the Accused Products at issue in this lawsuit).

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts. As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

17.    Please identify and describe with particularity all instances of actual or apparent confusion between any product(s) or item(s) embodying the `156 Patented design and the Defendant's Accused Products.  Include in your answer the identity of all persons with knowledge of the facts relating to such confusion.  This interrogatory includes all instances where customers (or potential customers) have mistaken Mid-West Metal's Accused Products for a product/item embodying the `156 Patented design, or where customers (or potential customers) were deceived into purchasing a Mid-West Metal's Accused Product, believing it to be a product/item that embodies the `156 Patented design.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**18.**    For each and all of Simpson Venture's products or items that embody the design that is the subject of the `156 Patent, please state the following information:

> (a)    how many of each product Simpson Ventures has produced for each year in which Simpson Ventures has produced such products;
>
> (b)    how many of each product Simpson Ventures has sold for each year in which Simpson Ventures has sold such products;
>
> (c)    how much gross revenue Simpson Ventures obtained from such sales of each such product for each year in which sales were made; and
>
> (d)    how must it cost Simpson Ventures to produce, sell, deliver, and service each such product for each year in which sales were made.  In this aspect of your answer, please separately itemize by category and amount the costs and expenses associated with the following  -  manufacturing/production, marketing/advertising, transportation/delivery/distribution, administration and overhead costs, licensing fees, warranty/customer complaint costs, and any other costs.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in

26

violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**19.**    Please identify and describe in detail Simpson Venture's manufacturing capabilities – including, but not limited to, any facilities that it owns or operates (and their locations), any OEM arrangements that it has with other manufacturers, and its daily/monthly/quarterly/annual production capacities.    Please describe in detail any changes to such capabilities that have occurred since January 1, 2000, and identify such changes by date.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.    As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**20.** Please describe in detail, and specifically quantify, all of Simpson Venture's claims for damages arising out of its allegation that Mid-West Metal has infringed the `156 Patent. This includes claims, if any, for price erosion.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts. As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

21.)  If Simpson Ventures contends that there are any secondary indicia of non-obviousness relevant to the design that is the subject of the `156 Patent, then please state all facts and information pertaining to such, describe the asserted relationship between such, identify each person having knowledge of facts and/or an opinion of such, and identify each document pertaining to such.

**<u>RESPONSE</u>:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

22.)  Identify and describe in detail all instances in which Simpson Ventures contends that it has provided notice of its alleged patent rights under the `156 Patent under 35 U.S.C. § 287, including but not limited to, the marking of products covered by the `156 Patent.  For each such instance, provide the date, identify each person with knowledge of such facts, and identify each document relating to such.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**23.**    Please identify each instance where Simpson Ventures has obtained any information regarding any knowledge or confusion whatsoever on the part of any person as between the source, affiliation, or sponsorship of its wicker (or wicker-like) pet cages/home products (or any form of advertisement therefore) and the source, affiliation, or sponsorship of any Mid-West Metal's pet cages/home products (or any form of advertisement therefore) including the date and location of each such occurrence, the identity of the person who was confused, and the identity of all persons who witnessed or have knowledge of each such instance of confusion.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts. As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**24.**    Please state in detail the terms of engagement between Simpson Ventures and its lawyers in this litigation, including but not limited to, the terms relating to attorney's fees and litigation costs.  In addition, please state the number of hours your attorneys have spent in pursuing this litigation.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

25.)    State in detail all facts that are the basis for Simpson Venture's claim that Mid-West Metal's alleged infringement of the `156 Patent was and/or is willful, identify each witness that has personal knowledge of those facts, and identify each document that contains information relating to those facts.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**26.**    Identify all instances in which Simpson Ventures has communicated a cease and desist request/demand (or words to that effect) to any third party.  For each such instance, provide the date, the targeted third party, a description of the rights being asserted, a description of the targeted third party's response, the identities of all persons with knowledge of such, and the identity of each document relating to such.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts.  As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

27.    Identify all license agreements relating to pet products to which Simpson Ventures is or has ever been a party.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts. As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or the remaining interrogatories and hereby declines to answer.

**28.**    Identify all other lawsuits or claims of infringement by or against Simpson Ventures that relate to any product or item having any portion or components comprising or having the appearance of wicker, rattan, woven resin strand, or other woven material.

**RESPONSE:**

Plaintiff objects to this interrogatory as exceeding the number limits, including subparts, stipulated in the parties' Report of the Parties' Planning Meeting filed with the Court on or about January 26, 2007 in which the parties agreed to be limited to 30 interrogatories, including subparts, and in violation of Rule 33 of FRCP as exceeding the limit of 25 interrogatories, including subparts. As Defendants' interrogatories above already number up to 30, including subparts, Plaintiff is under no obligation to answer this or any remaining interrogatories and hereby declines to answer.

I AFFIRM UNDER PENALTIES OF PERJURY THAT THE INFORMATION SET FORTH HEREIN IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE.

_____
Jeffrey M. Simpson

As to Objection:

Respectfully submitted,

_____

Arthur A. Gardner
Gardner, Groff, Greenwald &
Villanueva, P.C.
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
*Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was duly forwarded to all counsel of record and interested parties on this 23rd day of July, 2007, via United States mail, postage prepaid, as follows:

James M. Hinshaw
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
*Pro Hac Vice*

Brett A. Ross
Carr Allison
100 Vestavia Parkway
Birmingham, Alabama  35216
(205) 822-2006

(And via Email to James M. Hinshaw at jhinshaw@bringhammchale.com)

*Attorneys for Defendant Mid-West Metal Products Company, Inc.*

 

 

_____

Arthur A. Gardner
Gardner, Groff, Greenwald &
Villanueva, P.C.
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339

### Groff, Brad

| | |
|---|---|
| **From:** | Gardner, Art |
| **Sent:** | Friday, July 20, 2007 11:40 AM |
| **To:** | JHinshaw@binghammchale.com |
| **Cc:** | RTM@CHLAW.com |
| **Subject:** | RE: Simpson Ventures v. MWMP |

James,

I am sorry, but I still cannot accommodate your request. We will stick to the offer of additional time sent to you last night -- 3 additional weeks for a damages expert and 1 additional week for any others.

I note that you give different justifications today for the requested extensions than you gave previously, so I don't know which to believe. Also, I pleaded with you to consider whether you could work with less than a full extra month for these expert id's and reports and you told me yesterday that you couldn't, that you had to have the full month. Now you tell me that you can work with less than the full month. Again, if you could work with less than a full month extension, you shouldn't have told me the opposite yesterday in our phone conference.

With best regards, I remain,
very truly yours,

*Art Gardner*

---

**From:** James M Hinshaw [mailto:JHinshaw@binghammchale.com]
**Sent:** Friday, July 20, 2007 8:30 AM
**To:** Gardner, Art
**Cc:** RTM; Brett A. Ross Esq. \(E-mail\)
**Subject:** RE: Simpson Ventures v. MWMP

Art - Well, you sure have a funny definition of what is accomodating.

As for the additional 3 day extension that I have agreed to for you to respond to our Interrogatories and Document Requests (July 23), you are welcome.

As for the 3 week extension on the damages expert report, we will work to meet that - so, to and including August 15.

As for the 1 week extension on the liability expert report, I am asking you to reconsider. I think that my expert can have his work wrapped up in time for me and my client to review it and present any follow up questions by August 10. I asked for the additional 2 weeks beyond that to accomodate my schedule, my client's schedule, and my experts

Exhibit C

schedule - particularly as the summer ends, and school schedules start. Apparently those are not of any concern for you or your client. Even with an August 10 date, there is little to no room for us to identify and/or analyze any unexpected issues with the report and/or resolve any unexpected delays. You state that you are concerned about the September 30 discovery cutoff date. You state no reason for your reluctance to be accomodating with that date (as we would be). Regardless, with an August 10 date, that still leaves you plenty of time to initiate whatever discovery you think you need to meet the September 30 discovery cutoff - let alone to get ready for a trial that is not scheduled to start until March of 2008. Simply put, there is no prejudice caused by our requested extension.

I do not appreciate your suggestion that we have not been diligent in working on this case. It simply is not true. Settlement discussions commenced after the Scheduling Report was agreed upon and submitted, and proceeded well into May of 2007 - I believe the date of your last position was May 11, 2007, and my client had to consider its options for a time after that. There was no justification for ramping up on experts analysis and fees until that avenue was exhausted - as your own actions have demonstrated. Indeed, by your own admission, the pursuit of these settlement discussions caused you to seek an extension of your expert deadlines - which we had in fact agreed to, and to which you had agreed would be reciprocal ("what is good for the goose is good for the gander"), but which was made moot by the Court giving you a 30 day extension of your deadline (sua sponte), but not giving us a similar 30 day extension. After settlement discussions died, both parties duly launched into serving written discovery requests. We worked hard to meet the deadlines for responding to your Interrogatories (July 13), and continue working hard on responding to your Document Requests (July 30). You have yet to respond to the Interrogatories and Documents Requests that we served back on June 4 and June 6 - the deadlines for which I agreed to extend, at your request, without question or demand for justification. Further, your written discovery responses are now not due until next Monday (again, yet another extension that I have agreed to, without question, simply because you asked for it). We expect to be provided information therein that we may want to have our experts consider in their analysis - yet another justification for our requested extension.

So, please reconsider your position on our request for extension of the liability expert id/report deadline. I can try to work with August 10, but even that will be a major press. I am nonetheless willing to make that effort if it will avoid having to involve the Court's time and resources to resolve this.

I need to know your position this morning, as I will be out of the office this afternoon and early next week. Thank you.

- James -


- James M. Hinshaw -
BINGHAM McHALE, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900
(317) 968-5385
jhinshaw@binghammchale.com
www.binghammchale.com

-----Original Message-----
**From:** Gardner, Art [mailto:agardner@gardnergroff.com]
**Sent:** Thursday, July 19, 2007 5:58 PM
**To:** James M Hinshaw
**Cc:** RTM
**Subject:** RE: Simpson Ventures v. MWMP

James,

Thank you for the 1 business day extension for Simpson Ventures to serve its discovery responses (now due Monday).

Regarding your request for a 30-day extension for Defendant Mid-West to identify experts and produce expert reports, I cannot agree. I would like to agree to the request, but cannot. In an effort to be as accommodating as possible, we can agree to a three-week extension for Mid-West to serve any financial expert report and a one-week extension for any other expert report.

We note that the requested blanket one-month extension for Mid-West to produce expert reports is problematic. Discovery closes on September 30, so the last day to serve written discovery requests (and get an answer thereto) will be in late August. If your client serves its expert report(s) on August 25, there would be precious little time to study the report(s) and do any follow-up discovery. That could lead to a need for extending the discovery period, which we do not wish at this time. Also, if your client has a strong defense to the infringement allegations, we want to see such sooner, rather than later, in order to allow the parties to evaluate the case and potentially minimize litigation costs.

As for the supposed justification for the extension, I am confused because I believe your experts would be engaged largely in response to our experts and our damages expert report was provided to you last month (and the technical/design expert report was provided last year). The time the parties spent trying to settle the action several months ago does not seem to be related to your present desire for more time. I asked you this afternoon whether you could work with a shorter extension, but you insisted that you had to have the full month extension. If Mid-West had been diligent on this, it would not now need another full month to complete this effort.

Both parties have been aware of these expert deadlines for quite some time now and Simpson Ventures managed to comply with its deadline. Moreover, you have had the expert report from our technical/design expert (Mr. Anders) since the suit was filed more than 9 months ago. We believe your client has had more than ample time to locate and work with an expert in rebuttal to Mr. Anders' report.

Given the length of time that your client has been in possession of the Mr. Anders' report, our first inclination was to grant no extension for Mid-West to serve an expert report in opposition thereto. In the interest of mutual cooperation and professional courtesy, we will agree to the one-week extension for any expert report other than from a damages expert (until August 1). Since the damages expert report from Simpson Ventures has been in your possession a shorter period of time, we are somewhat more sympathetic and are willing to allow Mid-West until August 15 to serve a damages expert report.

As always, I want to accommodate an opposing counsel's request for extension whenever I can. But the extension you have requested would create other problems in the suit. Under the circumstances, the above is the most I can agree to for you.

With best regards, I remain,
very truly yours,

*Art Gardner*

---

**From:** James M Hinshaw [mailto:JHinshaw@binghammchale.com]
**Sent:** Wednesday, July 18, 2007 7:19 PM
**To:** Gardner, Art
**Subject:** Simpson Ventures v. MWMP

Hi Art. I am writing to request your position on my need for an extension of time. Specifically, MWMP currently has a deadline of July 25 to produce its expert reports. In light of the due delay caused by our clients' efforts to explore settlement and the consequent due delay on commencing written discovery, I will need a 30 day extension - or to

August 25.  The time is also needed for my experts to view and digest your client's responses to our written discovery (which I show as due tomorrow pursuant to our agreement to extend your deadline for responding).  Please let me know if you have any objection to that.  Thank you.  - James -

- James M. Hinshaw -
BINGHAM McHALE, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900
(317) 968-5385
*jhinshaw@binghammchale.com*
www.binghammchale.com

CONFIDENTIALITY NOTICE:
This e-mail contains information that is privileged, confidential
and subject to legal restrictions and penalties regarding
its unauthorized disclosure or other use. You are prohibited from
copying, distributing or otherwise using this information if you are
not the intended recipient. If you have received this e-mail in error,
please notify us immediately by return e-mail and delete this email
and all attachments from your system.  Thank you.

DISCLOSURE REQUIRED BY CIRCULAR 230.
This Disclosure may be required by Circular 230 issued by the
Department of Treasury and the Internal Revenue Service. If this
e-mail, including any attachments, contains any federal tax advice,
such advice is not intended or written by the practitioner to be used,
and it may not be used by any taxpayer, for the purpose of avoiding
penalties that may be imposed on the taxpayer. Furthermore, any
federal tax advice herein (including any attachment hereto) may not
be used or referred to in promoting, marketing or recommending a
transaction or arrangement to another party.  Further information
concerning this disclosure, and the reasons for such disclosure,
may be obtained upon request from the author of this e-mail. Thank you.

# GARDNER GROFF

## GARDNER GROFF SANTOS & GREENWALD, PC

PATENT, TRADEMARK AND COPYRIGHT LAW AND RELATED MATTERS EXCLUSIVELY

ARTHUR A. GARDNER
BRADLEY K. GROFF
JOHN W. GREENWALD
DANIEL J. SANTOS

JOHN M. HARMAN•
MICHELLE E. KANDCER
LAWRENCE D. MAXWELL
LAWRENCE A. VILLANUEVA, PH.D.
JOSEPH W. STALEY

• OTHER BARS ONLY

January 9, 2007

James M. Hinshaw, Esquire
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN 46204-4900

jhinshaw@binghammchale.com
Via email (Fedex to follow)

Re:    Simpson Ventures, Inc. v. Mid-West Metal Products Company, Inc. et al.
       USDC, Middle District of Alabama; Eastern Division
       Case No. 3:06-cv-901-WKW

Dear James:

As we discussed last week, enclosed is a copy of our expert's report. We may yet choose to have the expert (Robert Anders) testify at the trial of this action and so the disclosure of this report and the attachments thereto is in compliance with FR 26(a)(2). We are forwarding this letter to you via email and FedEx. Due to the volume of the report and its attachments, we are only sending the report itself as an attachment via email. The FedEx package will contain the entire package of information with all attachments.

Meanwhile, we look forward to receiving the promised sales information from your client. As you and I discussed last week, Plaintiff is under the impression that your client is selling on the order of $2.5M (or more) of the subject product annually. You expressed your belief that the sales are substantially less than that. We look forward to hearing from you about what the actual sales figures have been in order to assist the parties in the evaluation of the case and to explore possible settlement.

With best regards, I remain,

Very truly yours,

Arthur A. Gardner
For the Firm

AAG:ah
Enclosures

Exhibit D

**Howell, Alicia**

| | |
|---|---|
| **From:** | Howell, Alicia |
| **Sent:** | Tuesday, January 09, 2007 5:50 PM |
| **To:** | 'jhinshaw@binghammchale.com' |
| **Subject:** | Please see attached |



Scan7350.pdf

Alicia Howell for
GARDNER GROFF SANTOS & GREENWALD, P.C.
*2018 Powers Ferry Road*
*Suite 800*
*Atlanta, Georgia  30339*

CONFIDENTIALITY NOTICE: The information transmitted herewith, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or attorney-client privileged material. Any review, retransmission, dissemination, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers. Thank you.



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

August 1,2007

Dear Customer:

The following is the proof of delivery you requested with the tracking number **860552550393**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery date: | Jan 11, 2007 10:51 |
| Signed for by: | D.GOFF | | |
| Service type: | Standard Overnight | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 860552550393 | Ship date: | Jan 10, 2007 |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| INDIANAPOLIS, IN US | ATLANTA, GA US |

| | |
|---|---|
| **Reference** | 2514 7-010 |

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

MUR42

**FedEx** ® US Airbill
Express

FedEx Tracking Number  **8605 5255 0393**

Form ID No.  **0215**    **Sender's Copy**

---

**1  From** *Please print and press hard.*

Date _____

Sender's FedEx Account Number  2013-9343-4

Sender's Name  **AAG**    Phone (770) 984-2300

Company  GARDNER GROFF SANTOS GREENWALD

Address  2018 POWERS FERRY RD STE 800

Dept./Floor/Suite/Room

City  ATLANTA    State  GA    ZIP  30339-7202

**2  Your Internal Billing Reference**
*First 24 characters will appear on invoice.*
2514-7-010

**3  To**

Recipient's Name  James Hinshaw    Phone ( )

Company  Bingham McHale

Recipient's Address  2700 Market Tower

*We cannot deliver to P.O. boxes or P.O. ZIP codes.*
Dept./Floor/Suite/Room

Address  10 W. market St,

*To request a package be held at a specific FedEx location, print FedEx address here.*

City  Indianapolis    State  IN    ZIP  46204-4900

0349803414



**Store your addresses at fedex.com**
Simplify your shipping. Manage your account. Access all the tools you need.

---

**4a  Express Package Service**    *Packages up to 150 lbs.*

☐ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx Standard Overnight
Next business afternoon.* Saturday Delivery NOT available.

☐ FedEx First Overnight
Earliest next business morning delivery to select locations.*

☐ FedEx 2Day
Second business day.** Thursday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx Express Saver
Third business day.* Saturday Delivery NOT available.

* To most locations.
FedEx Envelope rate not available. Minimum charge: One-pound rate.

**4b  Express Freight Service**    *Packages over 150 lbs.*

☐ FedEx 1Day Freight*
Next business day.** Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx 2Day Freight
Second business day.** Thursday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx 3Day Freight
Third business day.** Saturday Delivery NOT available.

* Call for Confirmation.    ** To most locations.

**5  Packaging**

☐ FedEx Envelope*    ☐ FedEx Pak*
Includes FedEx Small Pak, FedEx Large Pak, and FedEx Sturdy Pak.    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other
* Declared value limit $500.

**6  Special Handling**    *Include FedEx address in Section 3.*

☐ SATURDAY Delivery
NOT Available for FedEx Standard Overnight, FedEx First Overnight, FedEx Express Saver, or FedEx 3Day Freight.

☐ HOLD Weekday
at FedEx Location
NOT Available for FedEx First Overnight.

☐ HOLD Saturday
at FedEx Location
Available ONLY for FedEx Priority Overnight and FedEx 2Day to select locations.

**Does this shipment contain dangerous goods?**
One box must be checked.

☐ No    ☐ Yes
As per attached Shipper's Declaration.    ☐ Yes
Shipper's Declaration not required.    ☐ Dry Ice
Dry Ice, 9, UN 1845 _____ x _____ kg

☐ Cargo Aircraft Only

Dangerous goods (including dry ice) cannot be shipped in FedEx packaging.

**7  Payment**    *Bill to:*

Enter FedEx Acct. No. or Credit Card No. below.

☐ Sender
Acct. No. in Section 1 will be billed.    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

FedEx Acct. No.
Credit Card No.    Exp. Date

Total Packages    Total Weight    Total Declared Value†    FedEx Use Only
$    .00

† Our liability is limited to $100 unless you declare a higher value. See back for details. By using this Airbill you agree to the service conditions on the back of this Airbill and in the current FedEx Service Guide, including terms that limit our liability.

**8  NEW Residential Delivery Signature Options**    *If you require a signature, check Direct or Indirect.*

☐ No Signature Required
Package may be left without obtaining a signature for delivery.

☐ Direct Signature
Anyone at recipient's address may sign for delivery. Fee applies.

☐ Indirect Signature
If no one is available at recipient's address, anyone at a neighboring address may sign for delivery. Fee applies.

**519**

Rev. Date 11/05•Part #158279•©1994–2005 FedEx•PRINTED IN U.S.A.•SRS