IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
<u>EASTERN DIVISION</u>

| | |
|---|---|
| SIMPSON VENTURES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MID-WEST METAL PRODUCTS )<br>COMPANY, INC. )<br>)<br>Defendant. )<br>_____)<br>)<br>MID-WEST METAL PRODUCTS )<br>COMPANY, INC., )<br>)<br>Counterclaimant, )<br>)<br>v. )<br>)<br>SIMPSON VENTURES, INC., )<br>)<br>Counterdefendant. ) | Civil Action File No. 306CV-901-WKW<br><br>**Demand for Jury Trial** |

## MID-WEST METAL'S MOTION TO EXTEND DEADLINE FOR CERTAIN DISCOVERY AND TO EXTEND DEADLINE FOR DISPOSITIVE MOTIONS

Defendant/Counter-Claimant Mid-West Metal Products Company, Inc. ("Mid-West Metal"), by counsel, respectfully requests that the deadline to complete discovery of liability expert witnesses be extended, and that the deadline for filing dispositive motions be extended. The deadline to complete discovery is presently June 15, 2008, and the deadline to file dispositive motions is presently August 11, 2008.  Neither date has passed.  The reason for these requested extensions is that the Federal Circuit[1] has yet to issue its *en banc* decision in the design patent infringement case of <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>  As explained in further detail

---

[1] The Federal Circuit has exclusive appellate jurisdiction over all patent infringement lawsuits, and its precedent is controlling.

below, the Federal Circuit's anticipated decision in <u>Swisa</u> will likely have a very significant impact on the infringement claims at issue in this design patent case – and specifically how this Court is supposed to evaluate dispositive motions, claim construction, and possibly instruct the jury on Simpson Ventures' infringement claims and Mid-West Metal's defenses to those claims. As the date of that important decision is not yet known, Mid-West Metal respectfully submits that new deadlines for the completion of liability expert discovery and for the dispositive motions not yet be reset until after the <u>Swisa</u> decision is announced. In further support of this Motion, Mid-West Metal states the following:

1.) This is a design patent infringement case. Specifically, Plaintiff/Counter-claim Defendant Simpson Ventures, Inc. ("Simpson Ventures") alleges that certain "Bay Isle" products (wicker covered pet crates) infringe upon the design that is the subject of its US D483,156 S Patent (the " `156 Patent").

| Figure 1 of the '156 Product | Model 1842 of the Bay Isle Products |
|---|---|




Mid-West Metal denies that its Bay Isle products infringe the '156 Patent under the design patent infringement law established prior to and including the Swisa panel decision, and further contends that there is no liability because the `156 Patent is invalid.

2.) The undersigned counsel has conferred with Simpson Ventures' counsel about the extensions requested in this Motion. Even though in December 2007, Simpson Ventures initiated the agreed-to continuance of the first trial date set for this matter (previously set for March 10, 2008) and the agreed-to extension of all discovery deadlines specifically because of the importance of the pending Swisa case and for the sake of efficiency, Simpson Ventures surprisingly now objects to the more narrow extensions sought by Mid-West Metal herein.[2]

**A.)   The significance of the *Swisa* appeal.**

3.) In light of Simpson Venture's about-face objection to the limited extensions requested herein, an overview of design patent infringement law is important to understanding the significance of the anticipated Swisa decision. That overview of pre-Swisa case law is as follows:

- "Similar to the infringement analysis of a utility patent, infringement of a design patent is evaluated in a two-step process. First, the court must construe the claims of

---

[2] On December 17, 2007, this Court conducted a conference initiated by Simpson Venture's counsel. On December 5, 2007, Simpson Ventures' counsel wrote in an e-mail that "*we feel duty-bound to advise the Court that the [Swisa] case is being re-heard en banc and that there is some chance that the design patent law could change in important ways (it may not change at all, but it could). The lawyers on both sides know that there is some chance that we could end up trying the case twice, depending on the outcome in [Swisa] and the timing of our trial. We are of the firm opinion that we need to disclose that to the Court.*" As a result of the December 17, 2007 conference, the Court continued the trial date from March 10, 2008 to December 15, 2008 because of the pending review of the Swisa appeal. During the December 17, 2007, conference the Court asked the parties to put together a new discovery schedule. After some dispute, the parties ultimately agreed at that time to a discovery cutoff date of May 1, 2008 – but the undersigned counsel for Mid-West Metal specifically noted "*I will agree to the May 1 discovery cut-off if for no other reason than to move forward on this. I do so with the express reservation that if we do not have a decision on the SWISA case as we approach that date, then the parties will need to revisit that deadline. Again, it makes no sense to take depositions of experts who have expressly based their decisions on the existing liability and invalidity standards, only to then have to turn around and retake their depositions after they have reconsidered any developments coming out of SWISA.*" The Court thus proceeded to issue its Order of January 2, 2008, continuing the trial date, the discovery date, and the various pre-trial deadlines because of the pending review of the Swisa decision.

the design patent to determine their meaning and scope. . . . Second, after construction of the patent's claims, the court is to compare the construed claims to the accused design." Arminak and Associates, Inc., et al v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319-20 (Fed.Cir. 2007).

- With regard to the first step of construing the design patent claims, it has long been established that "[d]esign patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings." In re Mann, 861 F.2d 1581, 1582 (Fed.Cir. 1988). "Design patents typically are claimed as shown in drawings. Claim construction by a court is adapted accordingly. . . . The scope of the claim of a patented design `encompasses its visual appearance as a whole, and in particular the visual impression it creates.'" Moreover, a "design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." Arminak, 501 F.3d at 1319, *citing* Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed.Cir. 1998) and *citing* Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed.Cir. 2002). "The chief limitation on the patentability of designs is that they must be primarily ornamental in character. If the design is dictated by performance of the article, then it is judged to be functional and ineligible for design patent protection." Arminak, 501 F.3d at 1319; Best Lock Corp. v. Ilco Unican Corp., 94 F.3d 1563, 1566 (Fed.Cir. 1996).

- With regard to this first step of claim construction, the Court is required to verbalize the visual impression made by the drawings presented in a design patent in order to construe the claim presented. Elmer et al. v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed.Cir. 1995) ("Determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed.Cir. 1995)."); Arminak, 501 F.3d at 1319 and 1321 ("First, the court must construe the claims of the design patent to determine their meaning and scope. . . . Our case law does not prohibit detailed claim construction of design patent drawings. It merely disapproves claim construction that goes beyond the novel, nonfunctional ornamental features visually represented by the claimed drawings, or that fails to encompass the claimed ornamental features of the design as a whole."). Claim construction is a question of law for the Court to determine.

- With regard to the second step of the design patent infringement analysis, it is established that "[i]n comparing a design patent claim to the accused design to determine infringement, a court must apply `two distinct tests, both of which must be satisfied in order to find infringement: (a) the `ordinary observer' test, and (b) the 'point of novelty' test.'" Lawman Armor v. Winner Intern., LLC, 437 F.3d 1383, 1384 (Fed.Cir. 2006), *as clarified by* 449 F.3d 1190 (Fed.Cir. 2006); *citing* Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed.Cir. 2002).

- Under the "ordinary observer" sub-test, the patent holder bears the burden of proving that "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, [the] two designs are substantially the same, if the resemblance is such as to

deceive such an observer, inducing him to purchase one supposing it to be the other." Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). Arminak, 501 F.3d at 1323 (precedent establishes "that the ordinary observer is a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision when observing the accused item's design whether the accused item is substantially the same as the item claimed in the design patent.") Specifically, "the question to be addressed in applying the ordinary observer test is whether the ordinary observer would be deceived by the accused design because it is substantially similar to the patented design. . . . [The test requires] the comparing of the accused and patented designs from all views included in the design patent, not simply those views a retail consumer seeking to buy would likely see when viewing the product at the point of sale." Arminak, 501 F.3d at 1325.

- Under the "point of novelty" sub-test, the patent holder bears the burden of proving that "no matter how similar two items look, the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed.Cir. 1984); Lawman Armor, 437 F.3d at 1384-85. However, the Court typically will not view a *combination* of several features already present in the prior art as a "point of novelty."

  > What the patent owner's contention comes down to is that the patent contains a ninth 'point of novelty,' namely, the *combination* in a single design of the eight *non-novel* 'points of novelty' it embodies. This argument is inconsistent with, and would seriously undermine, the rational of the 'points of novelty' test. . . . Litton did *not* hold that the combination of several points of novelty was itself a point of novelty, but rather held that there were several points of novelty in the patented design, none of which was found in the accused design. The patent owner's argument would stand the `points of novelty' test on its head, and defeat its purpose.

  Lawman Armor, 437 F.3d. 1383, 1386 (Fed.Cir. 2006), *supplemented by* 449 F.3d 1190, 1192 (Fed.Cir. 2006). The Federal Circuit reiterated that the "overall appearance" of a design cannot itself be a point of novelty. However, the Federal Court also acknowledged, somewhat cryptically, that in "appropriate circumstances" a "combination of design elements itself may constitute a point of novelty." Lawman Armor, 449 F.3d at 1192.

4.) On August 29, 2007, a three-judge panel of the Federal Circuit issued its decision in the Swisa case. Swisa, 498 F.3d 1354 (Fed.Cir. 2007). With regard to combinations of elements that are individually already known in the prior art, the Federal Circuit held as follows:

5

> The patentee is <u>not</u> free to set forth any combination of elements as the point of novelty, rather, the point of novelty must include features of the claimed design that distinguish it from the prior art. (<u>Id</u>. at 1357.)
>
> * * *
>
> For a combination of individually known design elements to constitute a point of novelty, the combination must be a <u>non-trivial advance</u> over the prior art. (<u>Id</u>. at 1357.)
>
> * * *
>
> Design patent law has already intertwined the infringement and validity tests. The infringement test at issue in this case is the `point of novelty' test. The question is not whether the infringement and validity analyses are similar or conflated, they already are. The question is: when the patentee claims a combination of old prior art elements as its asserted point of novelty, should the test be one of anticipation [(which is stricter, and requires identical features)] or obviousness? We conclude that non-triviality ought to apply. If the standard is akin to anticipation [(or identical features)], then a combination with even the most trivial difference would meet the standard. (<u>Id.</u> at 1358, footnote 3.)

5.)    On November 26, 2007, the Federal Circuit vacated the August 29, 2007 panel decision, and announced its decision to rehear the <u>Swisa</u> appeal *en banc*. Id., 256 Fed.App. 357, 2007 WL 4179111 (Fed.Cir. 2007). Significantly, the Federal Circuit requested that the parties and *amici* brief the following issues:

> 1)    Should 'point of novelty' be a test for infringement of a design patent?
>
> 2)    If so,
>
>> (a)    should the court adopt the non-trivial advance test adopted by the panel majority in this case;
>>
>> (b)    should the point of novelty test be part of the patentee's burden on infringement or should it be an available defense;
>>
>> (c)    should a design patentee, in defining a point of novelty, be permitted to divide closely related or ornamentally integrated features of the patented design to match features contained in an accused design;
>>
>> (d)    should it be permissible to find more than one `point of

6

>> novelty' in a patented design; and
>
> (e) should the overall appearance of a design be permitted to be a point of novelty? See <u>Lawman Armor Corp. v. Winner Int'l, LLC</u>, 449 F.3d 1190 (Fed.Cir. 2006).
>
> 3) Should claim construction apply to design patents, and, if so, what role should that construction play in the infringement analysis? <u>See</u> <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1577 (Fed.Cir. 1995).

6.) Accordingly, the Federal Circuit has announced its intent to reevaluate decades of design patent infringement law, and has suggested that it is considering whether to essentially start from scratch on certain aspects thereof.

7.) Such a sea-change approach in the area of patent law is not exactly surprising. Over the past several years, the Federal Circuit has undertaken to re-evaluate decades of precedent in numerous areas of patent law, and has often overturned long-established precedent and entirely rewritten patent jurisprudence. See e.g., <u>In re: Seagate Technology</u>, 497 F.3d 1360 (Fed.Cir. 2007) (Federal Circuit overturned precedent established since 1983 that had held that a potential infringer who has actual notice of another's patent rights had an affirmative duty to determine whether or not he is infringing);[3] <u>Knorr-Bremse v. Dana Corp.</u>, 383 F.3d 1337, 1343 (Fed.Cir. 2004) (2004) (reversing years of its own precedent establishing that an adverse inference arose if/when an accused infringer refused to waive attorney-client or work product privilege and disclose the opinion of legal counsel as a defense to willfulness claims).

---

[3] <u>Seagate</u>, 497 F.3d 1360 ("Accordingly, we overrule the standard set out in <u>Underwater Devices</u>, and hold that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness. . . [and] we also reemphasize that there is no affirmative obligation to obtain opinion of counsel. . . . [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.")

8.) Of course, some of the Federal Circuit's self-reflection in this arena has come at the urging of the United States Supreme Court, which has undertaken to review the Federal Circuit's standards in patent law more frequently and more critically in recent years. See e.g., KSR International Co. v. Teleflex, Inc., 127 S.Ct. 1727 (2007) (rejecting the Federal Circuit's more rigid and narrowed application of standards for evaluating whether a patent is invalid because it is "obvious" in light of the prior art, and thereby making it significantly more easy to establish that patents are invalid because the claimed inventions are obvious); MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764 (2007) (rejecting the Federal Circuit's precedent regarding the circumstances under which a patent licensee can file an action for declaratory judgment to challenge the patent holder's asserted patent rights); eBay Inc. v. MercExchange LLC, 126 S.Ct. 1839 (2006) (even where patent infringement is established, it is no longer an automatic conclusion that the infringing activity must be permanently enjoined under patent law; instead, "the decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court.")

9.) Moreover, it is important to note that the issues being considered by the Swisa court are not academic or otherwise removed from the issues presented in the present dispute. By way of example, Simpson Ventures has presented at least 6 different claimed "points of novelty" in this case, not just one. Moreover, each of those 6 claimed "points of novelty" is itself a conglomeration of numerous features or elements already present and known in the prior art. Indeed, the 6th claimed "point of novelty" is baldly stated as "a combination of the above" 5 stated points of novelty – again, each of which are themselves combinations of multiple elements or features already found in the prior art. By way of further example, in the recent fact-based depositions, it has become clear that Simpson Ventures views certain elements of the patented

design and the accused products as purely functional – and thus to be excluded from the infringement comparison. Mid-West Metals adamantly disagrees. This disagreement will require the Court to construe the scope of the design patent claims in what is essentially a Markman hearing – a proceeding that the Swisa court is presently deciding whether and how to conduct in the context of design patent law.

        **B.)**     **The requested extensions are limited and are appropriate for the sake of efficiency.**

    10.)     Mid-West Metal respectfully submits that its requested extensions here are limited and appropriate for the sake of efficiency. When the Swisa court announces its decision, it will likely settle significant portions of disputed design patent infringement law. Even if the Swisa court were to issue that decision tomorrow, the parties and their liability experts would need substantial time to revisit the infringement analysis – Simpson Ventures and its expert (Robert Anders, formerly a professor of Industrial Design at Pratt University in New York) would need time to evaluate the Swisa decision, and to then proceed to issue a revised report. Mid-West Metal and its expert witness (Professor Bret Smith, a professor of Industrial Design at Auburn University for over 21 years) would need time to evaluate the Swisa decision, to evaluate Mr. Anders' new analysis, and to issue Professor Smith's own revised report. Depositions would then need to be scheduled and taken thereafter, of course accommodating the experts' professional schedules as appropriate.

    11.)     Mid-West Metal submits that it should not be required to proceed to prepare for and take Mr. Anders' deposition now, only to have to incur additional travel costs, expert witness costs, and attorneys fees to re-depose him after the Swisa decision is announced and his analysis is thereafter revised.

12.) The same is true for Simpson Ventures' deposition of Mid-West Metal's expert Professor Smith. Simpson Ventures' counsel have stated their intent to proceed with the second day of his deposition regardless of the <u>Swisa</u> issue in order to complete discovery by June 15. While Simpson Ventures may not need to care about paying any attorneys fees for Professor Smith's deposition, Mid-West Metal does care about such fees and costs. Mid-West Metal has already spent significant amounts of money paying for expert witness fees, attorneys fees, and travel costs in defending the first day of Professor Smith's deposition in Auburn, Alabama (April 28, 2008). It should not be compelled to pay more now to defend a deposition that will very likely have to be re-done once the <u>Swisa</u> decision is announced.

13.) Indeed, Simpson Venture's disregard for efficiency and economy now is entirely contrary to its prior stated concerns about such. As Simpson Venture's own counsel explained in an e-mail to the undersigned on December 5, 2007, if the parties proceeded with the present litigation on the then-present timetable, the parties could end up trying the case twice depending on when <u>Swisa</u> is decided. (See Footnote 2, herein.) With all due respect, Mid-West Metal respectfully submits that such a scenario would present a complete waste of the Court's resources, the jury's time, and the parties' own resources – and should thus be avoided. Indeed, it was these very concerns about efficiency that led this Court to conduct its conference with the parties on December 17, 2007 – and to therein continue the trial date and all discovery deadlines because of the pending review of the <u>Swisa</u> appeal. Indeed, at the conclusion of that conference, the Court stated that the new dates would need to be revisited as they approached if the <u>Swisa</u> decision was not announced by that time. That is precisely the situation presented now.

14.) However, to be clear, Mid-West Metal is not presently proposing a continuance of the trial date set for this Court's December 15, 2008, trial term. Rather, Mid-West Metal's

present request is more limited and seeks only an extension of the discovery deadline as such relates to the liability expert reports (June 15, 2008), and the dispositive motion deadline (August 11, 2008). All other deadlines and the trial date would remain in place for now, subject to further review or possible extension requests depending on when the Swisa decision is actually announced, and depending on the substance of that holding.

15.) Indeed, discovery in the case has been actively progressing at a significant pace. The parties have been working aggressively in their efforts to move forward on other aspects of this case while waiting on the Swisa decision.

- Written discovery has progressed, with both parties submitting additional requests for production - indeed, Simpson Ventures served a new set of document requests and requests for admissions on Mid-West Metal as recently as May 1, 2008.

- Numerous non-parties' documents are being subpoenaed, and certain non-parties are being noticed for deposition, possibly to occur in Atlanta, North Carolina, and/or Florida.

- The parties have conducted depositions of 9 different witnesses over the past 30 days in Indianapolis, Auburn, and Atlanta. The parties are in the process of scheduling even more depositions. Specifically, Simpson Ventures has requested depositions of 5 additional witnesses,[4] and a date for the second day of Mid-West Metal's liability expert Bret Smith. Mid-West Metals has requested depositions of 3 additional witnesses,[5] a date for the second day of Mr. Simpson's deposition, and a tentative date for Simpson Ventures' liability expert Robert Anders (contingent upon the Court's ruling on this Motion).

16.) Simpson Ventures counsel has adamantly insisted that all discovery must be accomplished before June 15, 2008 – despite the impact of the Swisa review. Again, though, with the exception of the liability expert depositions, Mid-West Metal is attempting to meet this aggressive schedule.

---

[4] Bob Dale, Brenda Bartlett, Yassir Karam, a 30(b)(6) of Mid-West Metal (topics not yet specified), and Yang Yuan.

[5] Mark Haley, Radio Fence 30(b)(6), and Simpson Ventures 30(b)(6) (on damages topics).

17.)   The deadline for filing dispositive motions is presently set for August 11, 2007. For the same reasons set forth above, this deadline should be extended, as well.  Design patent infringement disputes are often resolved by the District Courts through summary judgment – whether on the infringement issues or on invalidity defenses, such as obviousness.  Mid-West Metal expects that this case too should be resolved through summary judgment, and that the liability expert witnesses' reports, analysis, and testimony will provide an important factual and opinion-based foundation for such motions.   Again, for the sake of efficiency and economy, Mid-West Metal should not be required to proceed with incurring the fees and costs of briefing the summary judgment issues unless and until the law regarding design patent infringement is settled by the <u>Swisa</u> court.

18.)   Finally, it should be noted that the unnecessary expense and inefficiency of the approach necessitated by Simpson Venture's insistence on compliance with the current schedule is further compounded by the fact that there is a sister case presently on this Court's docket, with the Honorable Judge Albritton presiding.  Specifically, that case involves a wicker covered cat litter box cover and a different design patent (the US D534,321 S Patent).  Again, Simpson Ventures claims that that design patent has been infringed.  Mid-West Metal denies such infringement, and further contends that that patent is invalid.  The parties have each relied upon separate expert witness evaluations and opinions of Mr. Anders and Professor Smith that are separate and germane to the issues of that case.  Although the pre-trial schedule of deadlines is essentially identical to this action's schedule, that case is set for trial on this Court's November 17, 2008, trial calendar – even though that case was filed later than the present case, and the potential damages at stake in that later-filed case are less than 10% of the damages at issue in the

present case. A substantially identical Motion to Extend is being filed contemporaneously today with Honorable Judge Albritton.

    **C.)    New deadlines for completion of liability expert discovery and dispositive motions should not be established until after <u>Swisa</u> is decided.**

19.) During the December 17, 2007, conference with the Court, the parties had forecasted a possible decision in the <u>Swisa</u> case by mid-Summer 2008. However, briefing in the <u>Swisa</u> case was in fact not completed until March 24, 2008. The Federal Circuit has set the case for oral argument on June 2, 2008.

20.) It is not possible to accurately predict the outcome of the <u>Swisa</u> review, or when that decision will be announced. It will likely be in 2008, though. Moreover, as explained above, in light of the Federal Circuit's sweeping statement of the issues it wants to evaluate, the turmoil that its recent decisions have caused in the design patent world,[6] the Federal Circuit's recent track record in rewriting other significant areas of patent law, and the lapse of time,[7] it seems certain that something very significant will be decided.

21.) Accordingly, Mid-West Metal respectfully submits that a new deadline for completion of discovery regarding the liability experts and a new deadline for dispositive motions not be established until after the <u>Swisa</u> decision is announced, with the parties submitting a proposed scheduled to the Court within 15 days thereafter.

---

[6] <u>See e.g.</u>, Cook, <u>Points of Novelty, Lawman Armor, and the Destruction of Design Patents</u>, 12 J.Tech.L. & Pol'y 103 (June 2007) ("In March and May of 2006, the Court of Appeals for the Federal Circuit (CAFC) handed down two decisions that sent shockwaves through the design patent community."); Saidman, <u>The Crisis in the Law of Designs</u>, 89 J.Pat.&Trademark Off.Soc'y 301 (April 2007) ("Today, the[] positive attributes of design patents are at best under attack, and at worst are no longer true; rendering the law of designs in a state of crisis.").

[7] After all, if the Federal Circuit had wanted to simply leave the law on design patent infringement undisturbed, it would have said so long ago and/or not even undertaken to review the <u>Swisa</u> panel's decision.

WHEREFORE, Mid-West Metal, by counsel, respectfully requests that this Court extend the deadline for completing discovery of liability expert witnesses and extend the deadline for filing dispositive motions and vacate the present deadlines for such of June 15, 2008 and August 11, 2008, respectively.  Further, Mid-West Metal, by counsel, respectfully requests that the Court not establish new deadlines for such until after the <u>Swisa</u> decision is announced, with the parties submitting a proposed schedule to the Court for such events within 15 days thereafter, and for all other appropriate relief.

        Respectfully submitted,

s/ *James M. Hinshaw*
James M. Hinshaw
J. Neal Bowling
BINGHAM MCHALE LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
(317) 236-9907 (facsimile)
jhinshaw@binghammchale.com
nbowling@binghammchale.com

Brett A. Ross
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama  35216
(205) 949-2938
(205) 822-2057 (facsimile)
BAR@carrallison.com

*Attorneys for Defendant/Counterclaimant, Mid-West Metal Products Company, Inc.*

14

## CERTIFICATE OF SERVICE

    I hereby certify that on May 15, 2008, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Arthur A. Gardner
Bradley K. Groff
Joseph W. Staley
Gardner Groff Santos & Greenwald, PC
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
agardner@gardnergroff.com
bgroff@gardnergroff.com
jstaley@gardnergroff.com

Robert T. Meadows
Capell & Howard, P.C.
3120 B. Frederick Road (36801)
P.O. Drawer 2268
Opelika, Alabama 36803
rtm@chlaw.com

                                             s/ *James M. Hinshaw*

1296926