IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SIMPSON VENTURES, INC., )
)
Plaintiff, )
) Civil Act File No. 3:06-cv-901 WKW
)
v. )
) Demand for Jury Trial
MID-WEST METAL )
PRODUCTS )
COMPANY, INC. )
)
Defendant. )
)
)
MID-WEST METAL )
PRODUCTS )
COMPANY, INC., )
Counterclaimant, )
)
v. )
)
SIMPSON VENTURES, INC., )
)
Counterdefendant. )
_____)


PLAINTIFF SIMPSON VENTURE'S OPPOSITION TO DEFENDANT
MID-WEST METAL'S MOTION TO EXTEND DEADLINE FOR
CERTAIN DISCOVERY AND TO EXTEND DEADLINE FOR
DISPOSITIVE MOTIONS

Plaintiff Simpson Ventures Inc. (hereinafter "Simpson"), through counsel, respectfully requests that Defendant Mid-West Metal Products Company's (hereinafter "Mid-West") Motion to Extend Deadline for Certain Discovery and to Extend Deadline for Dispositive Motions be DENIED.

## A. OVERVIEW OF WHY THE MOTION SHOULD BE DENIED

1.    Extending expert discovery, and the time for dispositive motions, would delay the present litigation so much that it will require a postponement of the trial.  Delaying the trial should be avoided at this point, as the <u>trial has already been pushed back far enough</u>.

2.    Moreover, the en banc <u>Egyptian Goddess</u> decision will not necessarily be the end of the <u>Egyptian Goddess</u> case -- the losing party might yet convince the United States Supreme Court to take up the case.  At some point we have to try the case in front of us, not wait indefinitely for some change in the law that may never come.

3.    Moreover, there is a substantial likelihood that the Federal Circuit en banc decision will <u>not</u> require any change in the expert reports, additional time for expert discovery, extending the trial, etc.  The most likely outcome of the <u>Egyptian Goddess</u> decision would be as the law is today or new law that is consistent with the existing reports by both Anders and Smith.  The chance of new law requiring a new set of expert reports is <u>remote</u>.

2

4.    Instead of delaying discovery, dispositive motions, and the trial on the off-chance that the Egyptian Goddess appellate case will require some change in the expert reports, the parties and the Court should take a wait-and-see approach – it is entirely possible that the Egyptian Goddess ruling will have no impact on our case.

5.    MID-WEST has known about the pendency of the Egyptian Goddess appeal for many months.  The only thing that has changed since the parties last talked with the Court about the schedule is that MID-WEST's expert was exposed in deposition and they are hoping for a do-over of sorts for their expert.  In fact, MID-WEST only raised the issue of extending expert discovery for the first time the day after their liability expert admitted in deposition that his report contained erroneous conclusions and that he didn't read the cases he relied on in his report (among other infirmities).

6.    The parties are so far along (mere weeks from completing discovery in a case filed nearly 2 years ago) that it would be unwise and imprudent to derail the case now.  Simpson Ventures has been cooperative in trying to accommodate the needs of MID-WEST and has extended the already-extended discovery schedule to assist MID-WEST's counsel (who stated that he would have difficulty completing discovery by May 31 due to other commitments).  Thus, we have already extended the discovery (and with it

the expert discovery) as much as is prudent or practical. More extensions are not warranted.

## B. FACTUAL INTRODUCTION

The present suit was filed in October of 2006. Initially, the Court set the case for trial on the March 10, 2008 trial term. *See* Document 24 of the Court's docket entries. On May 22, 2007, the Court entered the Uniform Scheduling Order, setting the discovery deadline, expert disclosure deadlines, dispositive motion deadline, pretrial deadlines, etc. Thereafter, in July 2007 Mid-West moved the Court for an extension of the deadline for Mid-West to make its expert disclosure. Simpson Ventures opposed, in part on the basis that it would negatively impact the discovery deadline. The Court granted the motion over Simpson Ventures' objections. Ultimately, in part due to the disclosure of Mid-West's expert reports late in the discovery period and to accommodate the parties' desire to fully explore possible settlement, the parties jointly sought to extend the discovery deadline. The Court agreed, continuing the discovery deadline from September 30, 2007 to January 18, 2008. *See* the Order of Document 39 of the Court's docket system. In December 2007, the Court conducted a scheduling conference with the parties and re-set the trial date for December 15, 2008. During that scheduling conference, the parties discussed with the Court the pending en banc appeal at the Court of Appeals for the Federal Circuit (<u>Egyptian</u>

<u>Goddess v Swisa</u>).[1]  In response to the Court's setting of the case for trial for December 2008, on December 19, 2007 the parties then <u>jointly</u> filed a Joint Motion For Continuance (*See* Document 42) in which the parties asked for an extension of the discovery deadline, the dispositive motion deadline, and the pre-trial deadlines.  In this Motion for Continuance, the parties <u>jointly</u> discussed with the Court the particulars of the <u>Egyptian Goddess v Swisa</u> appeal and provided citation information therefore.  Thereafter, the deadline to complete discovery in this case was set by this Court to conclude on May 1, 2008.  *See* Document 43.  Before the May 1, 2008 deadline passed, the parties agreed amongst themselves to informally extend the discovery deadline to May 31, 2008.  As the May 31, 2008 approached, counsel for Mid-West sought an extension to the discovery period in order to accommodate counsel for Mid-West's schedule.  Simpson Ventures agreed to extend discovery until mid-June, which is where things stand today. Thus, the parties have agreed that discovery shall end on June 15, 2008 (the last weekday of the discovery period falls on Friday, June 13, 2008).

## C. ARGUMENT

### 1. Discovery and Expert Discovery has Gone on Long Enough.

---

[1] As will be explained below, Simpson Ventures felt duty bound to let the Court know about the <u>Egyptian Goddess</u> en banc appeal.  The parties were aware of it last fall and were using that knowledge in formulating their respective positions in the litigation.  The parties would have been remiss to not have disclosed this fact to the Court.  Clearly, the en banc appeal is the sort of information that the Court would like to have in setting schedules and managing its docket.

It is time to get on with the matter and bring this case to a conclusion. Extending expert discovery, and the time for dispositive motions, would delay the present litigation so much that it will require a postponement of the trial.  Defendant Mid-West would naturally like to delay the proceedings, as do many defendants.  Delaying the trial again should be avoided at this point, as the trial has already been pushed back far enough.

### 2. The En Banc Egyptian Goddess Case May Not End This Year.

The en banc decision from the Federal Circuit in the Egyptian Goddess case may not be handed down this year – one cannot say with certainty when the decision will arrive.  And even if it is handed down this year, it won't necessarily be the end of the Egyptian Goddess case -- the losing party might yet convince the United States Supreme Court to take the case.  The bottom line is that the parties and the Court can't wait indefinitely on Egyptian Goddess.  At some point we have to try the case in front of us, not wait indefinitely for some change in the law that may never come.

### 3. Egyptian Goddess Likely Will NOT Require New Expert Reports.

The most likely outcome of the Egyptian Goddess decision would be as the law is today or revised law that is consistent with the existing reports by both Anders and Smith.  The chance of new law requiring a new set of expert reports is remote.

The current state of design patent law is such that it is very unlikely that the Egyptian Goddess v. Swisa appeal will affect the expert opinions rendered by Mr. Robert Anders (for Plaintiff Simpson) and Mr. Bret Smith (for Defendant Mid-West). In order to demonstrate the effect that the Egyptian Goddess ruling may have on design patent law, it is important to briefly consider the current law as follows:

    a. "A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." Arminak & Assocs. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007) (citing Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).

    b. The elements of design patent infringement are set forth at 35 U.S.C. § 289, which states, Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $ 250, recoverable in any United States district court having jurisdiction over the parties. 35 U.S.C. § 289.

c. "Similar to the infringement analysis of a utility patent, infringement of a design patent is evaluated in a two-step process. First, the court must construe the claims of the design patent to determine their meaning and scope." Arminak, 501 F.3d at 1319 (citing OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997). "Design patents typically are claimed as shown in drawings. Claim construction by a court is adapted accordingly." Arminak 501 F.3d at 1319 (*citing* Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116 (Fed. Cir. 1998)). "The scope of the claim of a patented design 'encompasses its visual appearance as a whole, and in particular the visual impression it creates.'" Arminak 501 F.3d at 1319-1320 (*quoting* Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002).

d. Second, the court must compare the construed claims to the accused design. Arminak 501 F.3d at 1320 (citing Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).

e. The comparison of the patented and accused designs involves two separate tests, both of which must be satisfied to find infringement: the "ordinary observer" test and the "point of

8

novelty" test.   <u>Bernhardt, L.L.C. v. Collezione Europa USA, Inc.</u>, 386 F.3d 1371, 1383 (Fed. Cir. 2004).

f.   The "ordinary observer" test was first enunciated by the United States Supreme Court in <u>Gorham Manufacturing Co. v. White</u>, 81 U.S. 511, 528 (1872), which held that: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

g.   In a separate and distinct inquiry, the "point of novelty" test requires proof that the accused design appropriated the novelty which distinguishes the patented design from the prior art. <u>Litton Sys., Inc. v. Whirlpool Corp.</u>, 728 F.2d 1423, 1444 (Fed. Cir. 1984).

h.   Both the ordinary observer test and point of novelty test are factual inquiries.  <u>Bernhardt</u>, 386 F.3d at 1383.

i.   Historically the term "novelty," as used in the point of novelty test, has always been equated with an "anticipation" standard—meaning that an invention is not anticipated, and therefore is novel, as long as the invention comprises any physical

9

differences from all previous inventions. In comparing the invention with the prior art, a single reference must contain every feature of the invention to find the invention anticipated (and therefore lacking novelty). Therefore, as long as an invention is not pre-dated by another single reference having the exact same physical characteristics, the invention can be said to be "novel."

j. The <u>Egyptian Goddess</u> panel decision deviated from this historical and well-known "novelty" definition in ruling that in very limited circumstances, namely when a patentee claims a combination of known prior art elements as its only asserted point of novelty, the point of novelty test should incorporate a "non-triviality" standard instead of the historical novelty approach. <u>Egyptian Goddess</u>, 498 F.3d at 1358.

k. Defendant Mid-West is correct in pointing out that on November 26, 2007, the Federal Circuit vacated the <u>Egyptian Goddess</u> panel decision and decided to rehear the case en banc (a prior panel decision of the Federal Circuit can only be overruled after an en banc review by all of the Judges of the Federal Circuit). <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 256 Fed.Appx. 357 (Fed. Cir. 2007).

10

l.  In choosing to rehear the case en banc the Federal Circuit requested that the parties (along with amici curiae) brief the court on the following issues:

1) Should "point of novelty" be a test for infringement of design                                                     patent?

2) If so, (a) should the court adopt the non-trivial advance test adopted by the panel majority in this case; (b) should the point of novelty test be part of the patentee's burden on infringement or should it be an available defense; (c) should a design patentee, in defining a point of novelty, be permitted to divide closely related or ornamentally integrated features of the patented design to match features contained in an accused design; (d) should it be permissible to find more than one "point of novelty" in a patented design; and (e) should the overall appearance of a design be permitted to be a point of novelty? *See* <u>Lawman Armor Corp. v. Winner Int'l, LLC</u>, 449 F.3d 1190 (Fed. Cir.                                                        2006).

3) Should claim construction apply to design patents, and, if so, what role should that construction play in the

infringement analysis? *See* <u>Elmer v. ICC Fabricating, Inc.</u>,

67 F.3d 1571, 1577 (Fed. Cir. 1995).

There have been in excess of 30 briefs filed in response to the Federal

Circuit's request. It is important to note that the overwhelming majority of

those briefs respond to the Federal Circuit's first inquiry (whether the point

of novelty test has any place in design patent infringement) by asserting that

the point of novelty test is not needed and should be discarded. <u>Such a</u>

<u>change in the law would not necessitate the experts in the present case to</u>

<u>revisit their opinions or issue revised reports, as the point of novelty test is a</u>

<u>separate and distinct inquiry from the Gorham "ordinary observer" test</u>. In

such an event, the parties could simply ignore the point of novelty inquiry in

the respective reports.

Similarly, many of the briefs have pointed out that a verbal construction

of the claims in a design patent is not needed, as design patents specifically

claim what is shown in the drawings. These briefs point out it is difficult, if

not impossible, to adequately describe a picture using words—no amount of

words can accurately portray a drawing. Regardless, the outcome of the

Federal Circuit's decision regarding this topic is irrelevant to the

Defendant's request to delay expert discovery, as it is the Court's job to

properly construe a patent claim.

The Defendant's argument that the Federal Circuit is considering "starting from scratch" and rewriting decades of design patent infringement law is simply unfounded.  Of course, the Federal Circuit does not have a blank slate by which it can simply modify design patent law as it sees necessary because much of design patent law stems from <u>Gorham v. White</u> and the Gorham test, or "ordinary observer" test, that was handed down by the Supreme Court in 1871 and has not been modified by the Supreme Court since.  The Federal Circuit is only at liberty to modify those areas of design patent law that have been left to the Federal Circuit by the U.S. Supreme Court.

While the Defendant may claim that the <u>Egyptian Goddess</u> case before the Federal Circuit is essential to this case, it is not prudent for this Court to hold its docket hostage in anticipation of this decision.  First of all, the <u>Egyptian Goddess</u> appellate case may not be a decision that is ready any time soon.  The case is slated for oral argument early next month (presently June 2, 2008) and normally a ruling would come out in about 90-120 days thereafter (although it is impossible to predict how long it will take and en banc rulings traditionally take longer than panel decisions).  If the decision comes out in 120 days, it would mean that the decision might not be rendered until early October.  The Plaintiff objects to continuing discovery and the subsequent dispositive motions well into October/November, and

then attempt to have a trial in December, assuming that the Court's calendar even permits this. The likely result of the Defendant's request to extend discovery is to put off the trial for many more months. All the while, in all these delays, the Defendant continues to sell the infringing products to their profit and to the detriment of the Plaintiff. Justice delayed is justice denied. Plaintiff needs an adjudication of the issues in this suit this year, not the next.

Second, there is no predicting how, if at all, the <u>Egyptian Goddess</u> en banc decision will impact this case. There is no telling what the decision will be, what issues the Federal Circuit will hear, and what law the Federal Circuit will change or create. In fact, as addressed above, there is a substantial likelihood that the Federal Circuit's decision will not require any change in the expert reports, additional time for expert discovery, extending the trial, etc. The most likely outcome of the <u>Egyptian Goddess</u> decision is the law as it is today or a new law that is completely consistent with the existing reports by both Anders and Smith. This is especially true when one reviews the numerous amici briefs filed in support of the existing state of the law. The chance of a new law requiring a new set of expert reports is remote.

Third, even if this Court holds the docket to hear the en banc decision of the Federal Circuit there is no guarantee that the en banc decision will

be the end of the <u>Egyptian Goddess</u> case. The losing party might appeal to the Supreme Court (and as the Defendant has pointed out, the Supreme Court has showed a renewed interest in reviewing important Federal Circuit rulings). Would this Court be expected to hold the docket again, in favor of the Defendant, until another appeal runs its course? Just how long -- how many postponements -- would be appropriate to wait before completing discovery in our case? Plaintiff argues that this postponement is inappropriate, favors the Defendant, is an unacceptable waste of this Court's and the Plaintiff's time, and postpones the adjudication of this suit and the administration of justice for the Plaintiff.

The bottom line is that the parties and the Court don't need to hold up this case any further to see what happens in the appeal.

## 4. The Court and the Parties Should Take a "Wait-and-See" Approach.

Instead of delaying discovery, dispositive motions, and ultimately the trial itself, the parties and the Court should take a wait - and - see approach. It simply does not make sense to hold the docket for this case hostage on the off-chance that the <u>Egyptian Goddess</u> decision will require some change in the expert reports; it is entirely possible that the ruling will have no impact on our case. It would be a shame to delay our case indefinitely, only to ultimately learn that the <u>Egyptian Goddess</u> case requires no change in the reports and that we could have (and should have) continued on with the

case.  If there is some change in the law, as a result of the <u>Egyptian Goddess</u> case then and only then should the parties consider coming to the Court asking for some modification of the schedule.

### 5. Mid-West has known about <u>Egyptian Goddess</u> for months

Mid-West has known about the appeal for months now.  In fact, Mid-West discussed the case with the Court and filed a paper with the Court further discussing the case.  Yet, now and only now has Mid-West chosen to ask this Court to extend discovery deadlines as a result of the pending appeal.  Why didn't Mid-West press this current position during the phone conference with the Court last December?  Why didn't Mid-West press this position when it filed the Joint Motion for a Continuance (also filed last December)?  What has changed since then?  <u>What has changed is that the expert report of Mid-West's liability expert has been shown to have substantial problems since that time</u>.

It is suspicious that Mid-West was willing to spend substantial resources for counsel travel time and expenses, expert witness preparation and testimony costs, and legal fees (for two attorneys) to defend Simpson's deposition of Bret Smith on April 14, 2008 (as well as conduct and defend many other depositions), and yet did not request the same extension it now seeks before incurring those expenditures.  Mid-West's argument that expert discovery should be extended until the <u>Egyptian Goddess</u> decision is

16

rendered on the basis that Mid-West is worried about fees and costs doesn't make sense. <u>It is more likely that Mid-West seeks such an extension because Mr. Smith was forced to admit during his deposition on April 14, 2008 that several of his conclusions in his report were incorrect</u>. In fact, Mid-West first addressed the issue of extending the time to complete expert discovery the day after Mr. Smith's deposition.

It would appear that Mid-West is merely seeking additional time to rehab Mr. Smith's expert report and is attempting to establish that a new report by Mr. Smith will be warranted barring <u>any</u> change in the law following the <u>Egyptian Goddess</u> decision. However, as discussed in greater detail above, it is very unlikely that the <u>Egyptian Goddess</u> decision will have any bearing on either parties' expert reports as presently written, including all supplements. Therefore, the Defendant's present Motion is premature and should only be addressed if/when the <u>Egyptian Goddess</u> ruling significantly alters design patent law such that the present expert reports are ineffective and require supplementation. Also, it is important to point out that a ruling by the Federal Circuit in the <u>Egyptian Goddess</u> case is not expected until late summer/early fall (but it is impossible to accurately predict the actual timeframe). So in effect, Mid-West is not just asking for an extension of expert discovery and dispositive motions, but rather is

substantively asking to move the trial back for a second time (pretty much indefinitely).

## 6.  More Extensions at this Late Stage are Unwise and Imprudent.

Extending expert discovery, and subsequently, the deadline for any dispositive motions, will delay the case so much that it will likely require a postponement of the trial. The trial date has already been pushed out far beyond its originally scheduled time. The Plaintiff filed this lawsuit for an adjudication of the issues. All the while, Defendants continue to sell the infringing products and irreparably harm the Plaintiff in doing so. Further delaying the trial and the adjudication of these issues should be avoided at this point. The Plaintiff has waited long enough for his day in court, and is prepared to proceed with the current discovery and trial schedule.

## 7.  Other Considerations and Facts

The parties are substantially far along in this suit, having less than three weeks left in discovery in a case that was filed almost two years ago. It would truly be an injustice to the Plaintiff to further delay the adjudication of this case for the Federal Circuit to rule. Such a delay would be unfounded and imprudent. Plaintiff has been very cooperative in trying to accommodate the needs of Defendant and has already agreed to extend an already-extended discovery schedule to assist Defendant's counsel (who stated that he would have difficulty

18

completing discovery by May 31 due to other commitments). Thus, having already extended the discovery period several times, including expert discovery, additional extension are as unnecessary as they are imprudent or impractical. More extensions are simply not warranted for the reasons Defendant puts forth in its Motion to Extend Discovery.

The Defendant's Motion to Extend discovery is a thinly-veiled attempt to even further postpone the adjudication and ultimate resolution of the issues in this case. The parties have all known about the pendency of the <u>Egyptian Goddess</u> appeal for months now. It is indeed very suspicious that Defendants wait until the end of discovery and after several depositions (including those of the expert witness Bret Smith for the Defendant) to bring the pendency and alleged critical importance of <u>Egyptian Goddess</u> before this Court. In fact, why didn't the Defendant ask for this relief last month? Two months ago? Three months ago? Or, when the parties last communicated with the Court? The truth is that the only thing that has changed since the parties last talked with the Courts about scheduling is that the Defendant's liability expert, Bret Smith, was deposed and was forced to admit during his deposition that several of his conclusions were incorrect. Defendants filed this Motion to, in effect, buy more time to salvage, repair or replace the testimony of their liability expert. It is not a coincidence that the Defendant raised the issue of extending expert discovery for the first

19

time the day after their liability expert admitted in deposition that his report contained erroneous conclusions and, moreover, that he didn't read the cases he relied on in his report (among other infirmities). *See* Exhibit A for a copy of selected deposition passages during which Mr. Smith made such admissions. Simply put, the Defendant's Motion is a thinly veiled attempt to create additional time for the Defendant to resuscitate and rehabilitate their expert.

Finally, Mid-West has done a masterful job of twisting the facts regarding Simpson Ventures' counsel "feeling duty-bound" to tell the Court about <u>Egyptian Goddess</u> and now wanting to forge ahead despite not having a ruling. In reality, here is what happened. In the fall of 2007, the parties were discussing possible changes to the schedule and were both aware of the <u>Egyptian Goddess</u> case being heard en banc at the Federal Circuit. So both parties were taking this fact into account in formulating their respective positions on the possible schedule for the litigation. Initially, Simpson Ventures stated that it wanted an earlier trial date and apparently so did Mid-West. But the time lost in settlement efforts made the mid-year trial unworkable for the parties <u>unless the parties could dispense with dispositive motions</u>, a notion that Mid-West could not accept. After some back and forth, the parties were in agreement that a mid-year trial could not be conducted following discovery and dispositive motions – there simply

20

wasn't enough time left.  Simpson Ventures then still wanted an earlier trial date and Mid-West was in favor of a later trial date and the parties were in disagreement.  Finally, it occurred to the undersigned that the lawyers were having these discussions about when the trial date should be, with knowledge that of the <u>Egyptian Goddess</u> appeal -- and that no one had told the Court about this!  So the undersigned insisted that the parties tell the Court of the <u>Egyptian Goddess</u> appeal.  Simpson Ventures did not advocate a late trial date because of the <u>Egyptian Goddess</u> appeal.  <u>Simpson Ventures never asked for any sort of indefinite stay of the proceedings until the Egyptian Goddess appeal would be decided as such would be inappropriate.</u>  *See* the emails attached hereto as **Exhibit B.**

**CONCLUSION**

For the above reasons, the present motion should be DENIED.

Respectfully submitted,

___/s/ Arthur A Gardner_____
Arthur A. Gardner
Gardner, Groff, Greenwald &
Villanueva, P.C.
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Pro Hac Vice

21

CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2008, I electronically filed the foregoing PLAINTIFF SIMPSON VENTURE'S OPPOSITION TO DEFENDANT MID-WEST METAL'S MOTION TO EXTEND DEADLINE FOR CERTAIN DISCOVERY AND TO EXTEND DEADLINE FOR DISPOTIVE MOTIONS with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

James M. Hinshaw
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
Pro Hac Vice

Brett A. Ross
Carr Allison
100 Vestavia Parkway
Birmingham, Alabama  35216
(205) 822-2006


Attorneys for Defendant Mid-West Metal Products Company, Inc.

___/s/ Arthur A Gardner_____

Arthur A. Gardner
Gardner, Groff, Greenwald &
Villanueva, P.C.
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION


SIMPSON VENTURES, INC.,

    Plaintiff/Counterclaimant,

vs.                 CASE NO. 3:06cv901-WKW

                CASE NO. 3:07cv00048-WHA-CSC


MID-WEST METAL PRODUCTS,

COMPANY, INC.

    Defendant/Counterdefendant.



* * * * * * * * * * *


    DEPOSITION OF BRET HUNTER SMITH, taken
pursuant to stipulation and notice before Mallory
M. Johnson, Certified Court Reporter and
Commissioner for the State of Alabama at Large,
at Auburn University, Department of Industrial
Design, 208 Wallace Center, 519 West Tach Avenue,
Auburn, Alabama, on Monday, April 28, 2008,
commencing at approximately 10:11 a.m.


* * * * * * * * * * *

Bret Smith
April 28, 2008

Page 153

1      prior art reference, not Mr. Anders'

2      assertion of any points -- of any points of

3      novelty, correct?

4   A.   I -- I -- that is my understanding.

5   Q.   So if all we have to do to evaluate whether a

6       patent is anticipated is compare the patent

7       drawings with the prior art, isn't it true

8       that your first statement on page 16 is

9       incorrect?

10  A.   I do not believe that the designs in Figures

11       18, 36, and 37 could be said to fully

12       anticipate the 156 design.

13  Q.   So that first sentence is wrong, correct?

14  A.   Yes.

15  Q.   Now, we have the same sort of issue with

16       regard to your application of the Gorham Test

17       in the third paragraph of page 16.  And do

18       you agree with me that under the Gorham Test,

19       one should compare the patented design, which

20       is defined by the drawings in the design

21       patent, with another product to see whether

22       that product is substantially the same to an

23       ordinary observer?

24  A.   Say that again, please.

25                  (The court reporter read from

Bret Smith
April 28, 2008

Page 156

1    Gorham Test, you would look at the 156 patent

2    drawings, correct?

3  A.   Yes.

4  Q.   And to see whether -- under the Gorham Test,

5    the prior art that you pointed out in these

6    three paragraphs -- whether that prior art is

7    substantially the same, you would compare the

8    prior art with the drawings of the 156

9    patent, correct?

A.   That's my understanding.

Q.   So is any of these three prior art

references, which you identified as Figures

18, 36, and 37, in your report of Exhibit

78 -- are any of those references

substantially the same under the Gorham Test

as what's shown in the 156 patent drawings?

A.   I do not believe that they are.

Q.   So this last sentence in the -- in this third

paragraph in which you say, Moreover, under

the Gorham Test, an ordinary observer would

view the overall designs as substantially the

same, is incorrect, right?

A.   That's correct.

        MR. GARDNER:  We can suspend the

    deposition for today.  We will resume

-----Original Message-----
From: Gardner, Art [mailto:agardner@gardnergroff.com]
Sent: Wednesday, December 19, 2007 2:52 PM
To: James M Hinshaw
Cc: BAR; gab; Groff, Brad; Neal Bowling; RTM; Joseph W. Staley Esq.
(E-mail)
Subject: RE: Simpson Ventures - `156 Patent

James,

Your email raises an issue that needs to be addressed.  That is, we never
advocated that the Court choose a later trial date, much less one so late
in the year.  Simpson Ventures would naturally prefer an earlier trial
date.  Instead of advocating a later trial date, we merely wanted the Court
to have the information about the Egyptian Goddess case so it could make an
informed decision in re-setting the trial date.  Obviously, the March date
was no longer workable and we all agree that a new date was needed.  But we
would not have asked for a December date.  And we never would have been in
favor of delaying discovery until after the Egyptian Goddess case is
concluded.

Despite the above, we are still okay with the dates as agreed.  Attached is
a slight correction to the Motion to make it more accurately reflect what
happened in the conference with the Court.  If you make these changes, you
have my express permission to file the pleading without further
consultation with me.

With best regards, I remain,
very truly yours,

Art Gardner

1

-----Original Message-----
From: James M Hinshaw [mailto:JHinshaw@binghammchale.com]
Sent: Wednesday, December 19, 2007 10:41 AM
To: Gardner, Art
Cc: BAR; gab; Neal Bowling; RTM; Staley, Joe
Subject: RE: Simpson Ventures - `156 Patent

Art - Frankly, I do not track your reasoning.  We just had a conference
with the Court where you felt duty-bound to tell the Judge that a decision
from the Federal Circuit was not likely until mid summer on a case that
could re-write design patent infringement law, and that the case should not
be set for trial until sometime thereafter - specifically in December 2008.
Yet despite that rationale, you now won't agree that the liability expert
reports and depositions could be impacted by that same decision, and thus
won't agree to a July discovery cutoff (which still leaves plenty of time
for dispositive motions and trial preparations, as the Judge himself made
clear).  Amazing.

Anyhow, I will agree to the May 1 discovery cut-off if for no other reason
than to move forward on this.  I do so with the express reservation that if
we do not have a decision on the SWISA case as we approach that date, then
the parties will need to revisit that deadline.  Again, it makes no sense
to take depositions of experts who have expressly based their decisions on
the existing liability and invalidity standards, only to then have to turn
around and retake their depositions after they have reconsidered any
developments coming out of SWISA.

As for the freeze on discovery in January, I am fine with agreeing to not
conduct depositions in January.  If the settlement discussions progress, we
obviously won't be pursuing such.  We may have some additional document
requests.  If the settlement discussions break down, then depending on
when/if that occurs, I may want to proceed to serve those in January.
Regardless, we will agree to look to dates after January for the
depositions.

I have attached the revised papers.  Let's get this wrapped up today.

Thank you.

- James -




-----Original Message-----
From: Gardner, Art [mailto:agardner@gardnergroff.com]
Sent: Tuesday, December 18, 2007 5:38 PM
To: James M Hinshaw
Cc: BAR; gab; Neal Bowling; RTM; Joseph W. Staley Esq. (E-mail)
Subject: RE: Simpson Ventures - `156 Patent


James,

After looking at your draft and checking the schedules of the likely
witnesses, I am now in a position to respond to the draft.  In general, the
proposed filing is acceptable, with one change.  That change is to move the
discovery cut-off back to May 1 (with an understanding between the parties
that there will be no discovery in January).  Regarding the freeze on
discovery in January, such will give the parties more time to perhaps
resolve the case.  Also, we have some witness unavailability, mostly in
January, so it is better to get re-started in February anyway.  Regarding
the May 1 cut-off date, that affords us 3 months to take the depositions,
which should be plenty.  There is no sense trying to put the depositions
off until late June in hopes of getting a new ruling from the Federal
Circuit.  Anyway, if you can agree to the May 1 date and the January
discovery freeze, we are agreed and can file the paper with the Court in
short order.


I will be in the office most of tomorrow, out Thursday morning for more
tests (but hope to be in by lunch), and I hope to work Friday morning.
Please call me if we need to discuss this further.  Otherwise, please send
me a revised draft for a prompt review.




With best regards, I remain,
very truly yours,

Art Gardner



-----Original Message-----
From: James M Hinshaw [mailto:JHinshaw@binghammchale.com]
Sent: Monday, December 17, 2007 11:19 AM
To: Gardner, Art
Cc: Staley, Joe; RTM@CHLAW.COM; Greg A. Brockwell Esq. \(E-mail\); Brett A.
Ross Esq. \(E-mail\); Neal Bowling
Subject: Simpson Ventures - `156 Patent

Art - Per the conference with the Court this morning, I have revised the
Joint Motion for Continuance that we previously circulated.  I tweaked it
to make reference to the Swisa decision, and modified the dates per the
Court's direction and guidance.  As for the discovery cut-off date, if we
are looking at a December trial date with a SJ deadline 3-months prior
(September), I don't see much reason to set a discovery cut-off in
February.  In addition, you may be right that the Federal Circuit does not
issue its decision until late spring/early summer.  That decision may
impact on the liability experts' analysis and reports.  It would not make
sense to take expert depositions in January/February only to have to retake
them in the summer, if such can be avoided.  So, I have proposed a
discovery cut-off of July 1, 2008.  That leaves plenty of time to brief SJ
motions, and prepare for trial.  Please review and advise.  Thanks.

- James -

  <<MWM-SV Joint Mot for Continuance (156).pdf>>


- James M. Hinshaw -
BINGHAM McHALE, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900
(317) 968-5385
jhinshaw@binghammchale.com
www.binghammchale.com
  CONFIDENTIALITY NOTICE:
This e-mail contains information that is privileged, confidential and
subject to legal restrictions and penalties regarding its unauthorized
disclosure or other use. You are prohibited from copying, distributing or
otherwise using this information if you are not the intended recipient. If
you have received this e-mail in error, please notify us immediately by
return e-mail and delete this email and all attachments from your system.
Thank you.

DISCLOSURE REQUIRED BY CIRCULAR 230.
This Disclosure may be required by Circular 230 issued by the Department of
Treasury and the Internal Revenue Service. If this e-mail, including any
attachments, contains any federal tax advice, such advice is not intended
or written by the practitioner to be used, and it may not be used by any
taxpayer, for the purpose of avoiding penalties that may be imposed on the
taxpayer. Furthermore, any federal tax advice herein (including any
attachment hereto) may not be used or referred to in promoting, marketing
or recommending a transaction or arrangement to another party.  Further
information concerning this disclosure, and the reasons for such
disclosure, may be obtained upon request from the author of this e-mail.
Thank you.

**Gardner, Art**

| | |
|---|---|
| **From:** | James M Hinshaw [JHinshaw@binghammchale.com] |
| **Sent:** | Monday, December 17, 2007 11:19 AM |
| **To:** | Gardner, Art |
| **Cc:** | Staley, Joe; RTM@CHLAW.COM; Greg A. Brockwell Esq. \(E-mail\); Brett A. Ross Esq. \(E-mail\); Neal Bowling |
| **Subject:** | Simpson Ventures - `156 Patent |
| **Attachments:** | MWM-SV Joint Mot for Continuance (156).pdf |



MWM-SV Joint
ot for Continuan

Art - Per the conference with the Court this morning, I have revised the Joint Motion for Continuance that we previously circulated. I tweaked it to make reference to the Swisa decision, and modified the dates per the Court's direction and guidance. As for the discovery cut-off date, if we are looking at a December trial date with a SJ deadline 3-months prior (September), I don't see much reason to set a discovery cut-off in February. In addition, you may be right that the Federal Circuit does not issue its decision until late spring/early summer. That decision may impact on the liability experts' analysis and reports. It would not make sense to take expert depositions in January/February only to have to retake them in the summer, if such can be avoided. So, I have proposed a discovery cut-off of July 1, 2008. That leaves plenty of time to brief SJ motions, and prepare for trial. Please review and advise. Thanks.

- James -

    <<MWM-SV Joint Mot for Continuance (156).pdf>>


- James M. Hinshaw -
BINGHAM McHALE, LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN  46204-4900
(317) 968-5385
jhinshaw@binghammchale.com
www.binghammchale.com
    CONFIDENTIALITY NOTICE:
This e-mail contains information that is privileged, confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this email and all attachments from your system. Thank you.

DISCLOSURE REQUIRED BY CIRCULAR 230.
This Disclosure may be required by Circular 230 issued by the Department of Treasury and the Internal Revenue Service. If this e-mail, including any attachments, contains any federal tax advice, such advice is not intended

or written by the practitioner to be used, and it may not be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. Furthermore, any federal tax advice herein (including any attachment hereto) may not be used or referred to in promoting, marketing or recommending a transaction or arrangement to another party.  Further information concerning this disclosure, and the reasons for such disclosure, may be obtained upon request from the author of this e-mail. Thank you.

**Gardner, Art**

| | |
|---|---|
| **From:** | James M Hinshaw [JHinshaw@binghammchale.com] |
| **Sent:** | Wednesday, December 05, 2007 6:58 PM |
| **To:** | Gardner, Art; bross |
| **Cc:** | Neal Bowling; RTM; Staley, Joe |
| **Subject:** | RE: Mid-West/Simpson... |

Then let's take care of that duty, Art.  My schedule early next week is
pretty flexible.  Let's try to target Monday late morning or early
afternoon.

Brett and/or Bob - Please advise if one of you are willing/able to see what
the Court can accomodate.  Thank you.

- James -

_____

From: Gardner, Art [mailto:agardner@gardnergroff.com]
Sent: Wed 12/5/2007 6:44 PM
To: bross; James M Hinshaw
Cc: Neal Bowling; RTM; Joseph W. Staley Esq. (E-mail)
Subject: RE: Mid-West/Simpson...

After looking at this carefully and consulting with our local counsel, we
are of the opinion that we need a conference with the Court to discuss
this.  In particular, we feel duty-bound to advise the Court that the
Egyption Goddess case is being re-heard en banc and that there is some
chance that the design patent law could change in important ways (it may
not change at all, but it could).  The lawyers on both sides know that
there is some chance that we could end up trying the case twice, depending
on the outcome in Egyption Goddess and the timing of our trial.  We are of
the firm opinion that we need to disclose that to the Court.  The best way
to do so is probably by conference.
I am proposing that we try to arrange a conference with the Court next
week, as early as the Court's schedule will permit.  I will be in all of
next week (assuming that my medical procedure tomorrow goes as planned).

With best regards, I remain,
very truly yours,

Art Gardner

_____

    From: James M Hinshaw [mailto:JHinshaw@binghammchale.com]
Sent: Wednesday, December 05, 2007 1:06 PM
To: Brett Ross; Gardner, Art
Cc: RTM; Staley, Joe; Neal Bowling
Subject: RE: Mid-West/Simpson...

Brett - Thank you.
Art - We would be fine with the July 28 trial term.  Please advise on your
position.  Thanks.
- James -
-----Original Message-----
From: Brett Ross [mailto:bross@carrallison.com]
Sent: Wednesday, December 05, 2007 8:34 AM
To: James M Hinshaw; Gardner, Art
Cc: RTM; Joseph W. Staley Esq. (E-mail); Neal Bowling
Subject: RE: Mid-West/Simpson...


After the June setting, the court calendar indicates that Judge Watkins has
civil jury terms on July 28 (Montgomery), October 20 (Montgomery) and
December 15 (Opelika).

_____

    From: James M Hinshaw [mailto:JHinshaw@binghammchale.com]
Sent: Tuesday, December 04, 2007 4:41 PM
To: Gardner, Art
Cc: Brett Ross; RTM; Joseph W. Staley Esq. (E-mail); Neal Bowling
Subject: RE: Mid-West/Simpson...


Art - Thanks.
We obviously will not waive our right to file for summary judgment.  So, if
you are concerned that there is not enough time between a February 28
discovery cut-off and a June 08 trial date (a concern that I do not share),
and are proposing that we look for trial dates in late summer or the fall,
we do not have an objection to that timeframe.  We proposed the June 08
trial term only because of my understanding that that is the next available
trial term for this Court.  Perhaps one or both of our local counsel could
look into what is the next available trial term to propose to the Court
after the June 08 term, and advise.
Alternatively, I suppose we could just agree upon a month in late
summer/fall of 08 and ask the Court to schedule the trial for a date in
that month - but I don't know if that's how this Court's trial calendar
works.
We will fix the reference to the Indiana court.
I am sure we will communicate further about this schedule this evening and
tomorrow, but I hope your medical tests on Thursday are favorable for you.
- James -
-----Original Message-----
From: Gardner, Art [mailto:agardner@gardnergroff.com]
Sent: Tuesday, December 04, 2007 5:18 PM
To: James M Hinshaw
Cc: BAR; RTM; Joseph W. Staley Esq. (E-mail)
Subject: RE: Mid-West/Simpson...


James,
Thanks for your indulgence.  We are okay with the concept generally, but

2

see a problem with the proposed schedule.  You have proposed a discovery
cut-off at the end of February and a trial in June.  Obviously, that won't
work unless we dispense with the opportunity for filing summary judgment
motions.    There just isn't enough time between Feb 28 and June to pursue
both SJ and pre-trial work.  Plus, it won't really allow the Court an
appropriate amount of time to decide any SJ motions that the parties might
file.
Therefore, I would suggest that we leave the discovery cut-off as is and
ask the Court for an appropriate trial calendar based on the new discovery
cut-off.  It would probably have to be later in the summer or sometime in
the fall.
Finally, please note that the proposed order references a court in Indiana.
Correction is needed.
I will be out of the office for more medical tests on Thursday -- I hope to
be back in the office on Friday.  I will be in the office tomorrow.

With best regards, I remain,
very truly yours,

Art Gardner

_____

        From: James M Hinshaw [mailto:JHinshaw@binghammchale.com]
Sent: Tuesday, December 04, 2007 9:29 AM
To: James M Hinshaw; Gardner, Art; Staley, Joe
Cc: Brett A. Ross Esq. \(E-mail\)
Subject: RE: Mid-West/Simpson...


    Art - I did not hear from either you or Joe yesterday on this.
    Please advise.  I would like to get this on file today.
    Thank you.
    - James -

    -----Original Message-----
    From: James M Hinshaw
    Sent: Monday, December 03, 2007 10:57 AM
    To: Art Gardner Esq. (E-mail); Joseph W. Staley Esq. (E-mail)
    Cc: Brett A. Ross Esq. (E-mail)
    Subject: FW: Mid-West/Simpson...


    Art and Joe - Here is our proposed Joint Motion for Continuance of the
`156 lawsuit.
        (I understand Joe and Brad are working on a separate motino for the
cat liter box lawsuit.)
    Please review and advise if ok to file today with the Court.
    Brett - Please advise if complies with local requirements.
    Thanks.
    - James -

-----Original Message-----
From: Laura A Case
Sent: Monday, December 03, 2007 10:53 AM
To: James M Hinshaw
Subject: Mid-West/Simpson...

CONFIDENTIALITY NOTICE:
This e-mail contains information that is privileged, confidential
and subject to legal restrictions and penalties regarding
its unauthorized disclosure or other use. You are prohibited from
copying, distributing or otherwise using this information if you are
not the intended recipient. If you have received this e-mail in error,
please notify us immediately by return e-mail and delete this email
and all attachments from your system.  Thank you.

DISCLOSURE REQUIRED BY CIRCULAR 230.
This Disclosure may be required by Circular 230 issued by the
Department of Treasury and the Internal Revenue Service. If this
e-mail, including any attachments, contains any federal tax advice,
such advice is not intended or written by the practitioner to be used,
and it may not be used by any taxpayer, for the purpose of avoiding
penalties that may be imposed on the taxpayer. Furthermore, any
federal tax advice herein (including any attachment hereto) may not
be used or referred to in promoting, marketing or recommending a
transaction or arrangement to another party.  Further information
concerning this disclosure, and the reasons for such disclosure,
may be obtained upon request from the author of this e-mail. Thank
you.