## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## <u>EASTERN DIVISION</u>

| | | |
|---|---|---|
| SIMPSON VENTURES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MID-WEST METAL | ) | |
| PRODUCTS | ) | |
| COMPANY, INC. | ) | |
| Defendant. | ) | |
| ‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗ ) | Case No. 06-cv-00901-WKW-VPM | |
| | ) | |
| MID-WEST METAL | ) | |
| PRODUCTS | ) | |
| COMPANY, INC., | ) | |
| Counterclaimant, | ) | |
| v. | ) | |
| | ) | |
| SIMPSON VENTURES, INC., | ) | |
| Counterdefendant. | ) | |
| ‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗ ) | | |

## <u>PLAINTIFF SIMPSON VENTURES, INC.'S</u>
## <u>MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE</u>
## <u>EXPERT REPORTS AND TESTIMONY</u>
## <u>OF DEFENDANT'S EXPERT, BRET H. SMITH</u>
## <u>UNDER *DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.*</u>

COMES NOW the Plaintiff, Simpson Ventures, Inc. (hereinafter "Simpson")

and files this Memorandum in Support of Motion in Limine under <u>Daubert v.

Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire

Company v. Carmichael</u>, 526 U.S. 137 (1999), and supporting authorities, seeking

1

a ruling of this Court precluding design patent validity and infringement testimony of the Defendant Mid-West Metal Product Company's ("Mid-West") proffered expert, Bret H. Smith, along with the exclusion of all expert reports produced by Mr. Smith.

## TABLE OF CONTENTS

I.  **INTRODUCTION**                                                          5

II.  **STATEMENT OF FACTS**                                                   6

III.  **ARGUMENTS AND CITATIONS TO AUTHORITY**                              12

  A.  **Mr. Smith is Not Qualified To Testify as to Patent Invalidity or Patent Infringement**                                                        14

    1.  *Mr. Smith <u>Admits</u> That He is Not a Patent Expert*            16

    2.  *Mr. Smith Lacks Any Experience, Education or Pertinent Knowledge Related to Patents*                                                   20

  B.  **Mr. Smith's Methodologies are Unreliable**                        25

    1.  *The Appropriate Standard for Design Patent Infringement*       26

    2.  *Mr. Smith's Incorrect Application of the Standard for Design Patent Infringement*                                                  29

    3.  *Mr. Smith Admits There are Material Errors in His Reports*      34

  C.  **Mr. Smith's Expert Testimony Will Not Assist the Trier of Fact**  36

IV.  **CONCLUSION**                                                           38

## TABLE OF AUTHORITIES

**CASES**

Arminak & Assocs. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314 (Fed. Cir. 2007)

............................................................................................ 27, 28

Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371 (Fed. Cir. 2004)

............................................................................................ 28, 29

Bourjaily v. United States, 483 U.S. 171 (1987) .................................................. 14

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) .. 1, 12, 13, 14,

25, 26, 34, 37, 39, 40

Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308 (Fed. Cir. 2001) .............. 27

Elmer v. ICC Fabricating, Inc., 67 F.3d 1571 (Fed. Cir. 1995) ....................... 27, 28

Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113 (Fed.

Cir. 1998) ........................................................................................ 28

Gorham v. White, 81 U.S. 511 (1872)....................................... 8, 10, 23, 28, 36, 37

KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007).................................. 8, 9, 10

Kumho Tire Company v. Carmichael, 526 U.S. 137 (1999) 1, 12, 13, 26, 34, 39, 40

Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984) ................... 29

Peters v. Active Mfg. Co., 129 U.S. 530 (1889)................................................... 27

Shirley v. Mitsubishi Motors Corp., 2005 U.S. Dist. LEXIS 46040 (N.D. Ala. Oct. 25, 2005)...................................................................................... 14

United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004) . 13, 14, 15, 25, 34, 38, 39, 40

United States v. Garcia, 447 F.3d 1327 (11th Cir. 2006) ...................................... 15

VFS Leasing Co. v. G. F. Kelly, Inc., 2007 U.S. Dist. LEXIS 51236 (M.D. Ala. July 13, 2007)..................................................................................... 14

**STATUTES**

35 U.S.C. § 289 ................................................................................... 28

Federal Rule of Evidence 104(a) ........................................................... 14

Federal Rule of Evidence 403................................................................ 38, 39

Federal Rule of Evidence 702................................................. 12, 13, 14, 15, 39

Federal Rule of Evidence 703................................................................ 38

**TREATISES**

*Chisum on Patents: A Treatise on the Law of Patentability, Validity and Infringement* (2008) ................................................... 8, 10, 12, 22, 23

## <u>TABLE OF EXHIBITS</u>

**Exhibit A.**    Bret Smith Expert Report, '156 Patent

**Exhibit B.**    James Hinshaw Letter Dated Aug. 22, 2007

**Exhibit C.**    Bret Smith Curriculum Vitae

**Exhibit D.**    Bret Smith Supplemental Expert Report, '156 Patent

**Exhibit E.**    Bret Smith Expert Report, '321 Patent

**Exhibit F.**    Bret Smith 2nd Supplemental Expert Report, '156 Patent

**Exhibit G.**    Bret Smith Deposition Transcript, April 28, 2008

**Exhibit H.**    Bret Smith Deposition Transcript, June 13, 2008

# I.  <u>INTRODUCTION</u>

Mr. Smith has been proffered by Defendant Mid-West as its expert in design patents, including the infringement and validity of design patents, but as will be shown herein, Mr. Smith is not an expert in design patent infringement or design patent validity.  In fact, Mr. Smith readily admits that he is not a design patent expert (or any kind of patent expert).  Moreover, Mr. Smith's stated experience is strictly limited to industrial design principles and he has no prior experience or training in patent matters of any kind—his only contact with design patents has been in connection with this case (and the companion case pending before Judge Albritton).  Furthermore, Mr. Smith has admitted that substantially all of his knowledge concerning design patents was obtained from reading a single chapter out of a patent law treatise.  As will be shown herein, Mr. Smith did not even read the seminal Supreme Court case, <u>Gorham v. White</u>, on design patent infringement before authoring "expert" reports on the subject matter.  Finally, the methodologies employed by Mr. Smith in reaching his conclusions are legally impermissible and lack any support.  Therefore, the proffered opinions of Mr. Smith concerning design patent infringement and validity are completely outside Mr. Smith's area of expertise.  For these reasons, and for the additional reasons set forth below, Plaintiff Simpson respectfully requests that this Court enter an Order finding that

Mr. Smith is not an expert in design patent infringement or validity, precluding the testimony of Mr. Smith on all matters outside his area of expertise, and excluding Mr. Smith's proffered reports. Plaintiff Simpson is filing a similar motion in the companion case pending before Judge Albritton (Case No: 3:07-cv-00048 WHA-CSC).

## II. STATEMENT OF FACTS

The instant case (hereinafter "the '156 Case") is a design patent infringement lawsuit based on the alleged infringement by the Defendant Mid-West of Plaintiff Simpson's Design Patent No. 483,156 (the "'156 patent"). The present litigation was filed on October 5, 2006 and trial is currently scheduled to commence on December 15, 2008. Plaintiff Simpson also brought Civil Action No. 3:07-cv-00048 WHA-CSC (hereinafter "the '321 Case"), which is also a design patent infringement lawsuit based on the alleged infringement by the Defendant Mid-West of Plaintiff Simpson's Design Patent No. 534,321 (the "'321 patent"). The '321 Case was filed on January 16, 2007 and is currently scheduled for trial on April 6, 2009. The '156 case and the '321 case ("Simpson cases") have many of the same issues and facts, but have not been consolidated.[1]

---

[1] The issues in the Simpson cases are very similar, so although the cases were not consolidated, for convenience, the parties agreed to a combined discovery track

The first notice that Defendant Mid-West planned to use Bret A. Smith ("Mr. Smith") as a design patent expert came with the arrival of his first report, dated August 17, 2007. **Exhibit A**, Bret Smith Expert Report, '156 Patent. The report arrived with a cover letter dated August 22, 2007 signed by counsel for the Defendant Mid-West, which stated in part as follows: "Bret H. Smith, who will provide expert opinion testimony regarding invalidity and non-infringement." **Exhibit B**, James Hinshaw Letter Dated Aug. 22, 2007 (emphasis added). The Defendant Mid-West relies on the opinion and testimony of Mr. Smith not only as a patent invalidity expert but also as a patent infringement expert. *Id.* Not once in any pleading or discovery response has Mr. Smith been proffered by the Defendant Mid-West to testify as to anything other than these two areas.

The first report for the '156 patent included an appendix which contained Mr. Smith's Curriculum Vitae. **Exhibit C**, Bret Smith Curriculum Vitae. Noticeably absent anywhere in the Curriculum Vitae were any references to previous experience, education, research, study, or involvement in design patent or design patent infringement work. *Id.* Mr. Smith's first report included significant errors in the application of the current state of design patent law to the facts of this case, including: misapplying the test for design patent anticipation (which he took

allowing for depositions to be taken of witnesses for both cases at the same time. The parties mutually agreed to extend discovery in both cases to June 15, 2008.

wholesale from the treatise *Chisum on Patents*[2], without independent research into case law or other treatises)[3]; neglecting to construe the claim of the '156 patent; misapplying the seminal <u>Gorham v. White</u>[4] case (which he admitted later he never read) to design patent anticipation, when the case has nothing to do with anticipation[5]; and applying the recent <u>KSR v. Teleflex</u>[6] case on utility patent obviousness to his '156 design patent obviousness analysis (despite the fact that he testified that he knows little about utility patents and is unaware of the different approaches that must be taken when analyzing design and utility patents for obviousness)[7].

On November 5, 2007, Mr. Smith supplemented the first report for the '156 case with a supplemental report.  **Exhibit D**, Bret Smith Supplemental Expert Report, '156 Patent.  In this Supplement Mr. Smith implemented a legally incorrect methodology in stating that multiple prior art references can be combined to meet an individual point of novelty when performing a design patent infringement analysis. *Id*.  Mr. Smith's Supplemental Report fails to support his approach with

---

[2] *Chisum on Patents: A Treatise on the Law of Patentability, Validity and Infringement* (2008).
[3] See discussion *infra* at III(A)(2) and III(B)(2).
[4] <u>Gorham v. White</u>, 81 U.S. 511 (1872).
[5] See discussion *infra* at III(B)(2).
[6] <u>KSR Int'l Co. v. Teleflex Inc.</u>, 127 S. Ct. 1727 (2007).
[7] See discussion *infra* at III(B)(2).

legal authority and, in fact, contradicts the well-known and long-accepted definition of patent "novelty". *Id*. During his subsequent deposition, Mr. Smith was unable to identify *any* support to back up his methodologies. BS1 26:13 – 29:4.

On March 3, 2008, Mr. Smith published the report for the '321 case, which contained many of the same errors that existed in the '156 report, including: completely failing to construe the claims of the '321 patent; confusing whether a wicker covering is ornamental or functional; applying the KSR v. Teleflex case on utility patent obviousness to the '321 design patent; and again using an unsupported and unsubstantiated methodology of combining multiple references to meet an individual point of novelty. **Exhibit E**, Bret Smith Expert Report, '321 Patent.

On April 22, 2008, Mr. Smith published a second supplement to the '156 report. **Exhibit F**, Bret Smith 2nd Supplemental Expert Report, '156 Patent.

On April 28, 2008, counsel for the Plaintiff took Mr. Smith's deposition testimony ("BS1"). A copy of the deposition transcript is attached hereto as **Exhibit G**, Bret Smith Deposition Transcript, April 28, 2008. In that deposition, Mr. Smith's testimony revealed that not only did he not fully understand the appropriate legal tests for design patent infringement and invalidity, but he

regularly confused them[8].  He admitted to not knowing anything at all about utility patents, though he applied cases (including the <u>KSR v. Teleflex</u> case) involving utility patents in his analysis. BS1 10: 13 – 20, 21: 3 – 22:14.[9]  His testimony revealed that his methodology for using <u>multiple</u> prior art references to attack an individual point of novelty <u>had absolutely no legal basis</u> or support. BS1 26: 13 – 29:4.  Most importantly, Mr. Smith confirmed what was readily apparent from his curriculum vitae – he has never been a design patent invalidity expert, nor a design patent infringement expert – nor has he ever had any education or experience related to design patents.  **Exhibit C**.  In short, Mr. Smith testified that other than *Chisum on Patents*, conversations with counsel for the Defendant Mid-West about patent law, and a read of the <u>KSR v. Teleflex</u> case, he did not study any other information about design patent law before writing his reports. BS1 125: 23 – 127:1, 127: 22 – 128: 25[10].  Mr. Smith also admitted that he had not read the seminal Supreme Court case on design patents, <u>Gorham v. White</u>.  BS1 137:11 – 138:15, 140:2 – 10.

Finally, on June 13, 2008, counsel for the Plaintiff took the remainder of Mr. Smith's deposition testimony ("BS2").  A copy of the deposition transcript is

---

[8] See discussion *infra* at III(C)(2)

[9] Mr. Smith also admitted the same in his June 13, 2008 deposition: BS2 150: 10 – 19.

[10] *Ibid.* at BS2 153: 12 – 18, 154: 17 – 155:3.

attached hereto as **Exhibit H**, Bret Smith Deposition Transcript, June 13, 2008.  <u>In his deposition Mr. Smith admitted that prior to the Simpson cases, he did not consider himself to be an expert in patent law (utility or design).</u>  BS2 149: 25 – 150: 19.  <u>Further, he readily admitted that he did not currently consider himself to be an expert in design patent matters: neither in design patent infringement matters nor in design patent validity.</u>  BS2 150: 20-153: 11, 154: 1-11.  In his own words Mr. Smith stated: "I would not make the statement that said I'm an expert in all matters of design patents."  *Id* at 152: 25 – 153: 6.  He continually attempted to limit his "expertise" to his review of the present Simpson cases and what was written in his reports.  *Id*.

Mr. Smith testified that he had <u>no experience</u> in conducting infringement or validity analysis other than the present Simpson cases.  *Id*.  He testified that the present cases were his first attempt at the "evaluation" of a design patent.  BS2 149: 8 – 24.  His testimony shows that much or all of what he knows about patent law was learned in preparation for his reports and testimony in these cases.  BS2 153:12 – 18; 154:17 – 155:3. However, Mr. Smith's design patent "crash-course" study, which ultimately became the basis for his opinions, was given to him by counsel for the Defendant Mid-West, either by way of documents such as *Chisum* or in conversations with counsel.  *Id*.  Mr. Smith only reviewed the legal materials

provided to him by Mid-West's counsel – he looked at no other source for design patent law. *Id*.

The record is replete with examples of Mr. Smith's inadequacies as an expert witness on the matters Mid-West proffers him for. If permitted to testify, Mr. Smith's testimony would not assist the trier of fact and would ultimately only confuse and prejudice the jury. This Court, in its gatekeeping role under <u>Daubert</u> and <u>Kumho Tire</u>, as well as Federal Rule of Evidence 702, should exclude the testimony (including the reports) of Mr. Smith on all issues related to patent invalidity and patent infringement.

## III.    <u>ARGUMENTS AND CITATIONS TO AUTHORITY</u>

Where testimony involving scientific, technical or specialized knowledge will assist the trier of fact, Federal Rule of Evidence 702 permits expert testimony, but requires that the testimony is 1) based on sufficient facts or data, 2) the product of reliable principles and methods, and that 3) such principles and methods are reliably applied to the facts of the case. Fed. R. Evid. (FRE) 702. As the Supreme Court held in <u>Daubert</u> and in <u>Kumho Tire</u>, FRE 702 compels district courts to perform the critical "gatekeeping" function concerning the admissibility of both scientific and technical expert evidence. <u>Daubert v. Merrell</u>, 509 U.S. 579, 589-90 (1993); <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137, 147 (1999). "This function

inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)(internal quotations omitted).

Indeed, "[t]he importance of Daubert's gatekeeping requirement cannot be overstated." *Id.* Therefore, trial courts in the Eleventh Circuit must engage in a "rigorous" three-part conjunctive inquiry in determining the admissibility of expert testimony under FRE 702:

(1) the expert is *qualified* to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently *reliable* as determined by the sort of inquiry mandated in Daubert; *and*

(3) the testimony *assists the trier of fact*, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (emphasis added)(interpreting Daubert); VFS Leasing Co. v. G. F. Kelly, Inc., 2007 U.S. Dist. LEXIS 51236, 7-8 (M.D. Ala. July 13, 2007); Shirley v. Mitsubishi Motors Corp., 2005 U.S. Dist. LEXIS 46040 (N.D.

Ala. Oct. 25, 2005).  While the tests of qualification, reliability, and helpfulness may overlap, courts must take care "not to conflate" them and must consider each distinctly.  Frazier, 387 F.3d at 1260.

Importantly, the proponent of expert testimony has the burden of establishing its reliability under FRE 702 by a preponderance of the evidence. Daubert, 509 U.S. at 591 n.10 (citing to FRE 104(a) and Bourjaily v. United States, 483 U.S. 171, 175-176, (1987)).  In the Eleventh Circuit and Middle District of Alabama, this burden includes establishing each prong of the test of **qualification, reliability,** and **helpfulness**, without regard to whether the proponent is the plaintiff or the defendant.  Frazier, 387 F.3d at 1260 (emphasis added); VFS v. G. F. Kelly, 2007 U.S. Dist. LEXIS 51236, 7-8..

This Court should not allow the expert opinion testimony of Mr. Smith for design patent invalidity and infringement because he sorely fails to meet any element of the Frazier test, being that he is grossly under qualified, and misunderstands and therefore misapplies essential concepts of design patent law in both his testimony and in his reports.  Most importantly, this Court should not allow the expert testimony of Mr. Smith because it will mislead the trier of fact, greatly prejudicing the jury in this case.

## A. Mr. Smith is Not Qualified To Testify as to Patent Invalidity or Patent Infringement

A witness may be qualified as an expert by knowledge, skill, experience, training, or education. United States v. Garcia, 447 F.3d 1327, 1334-1335 (11th Cir. 2006). Although an expert may be qualified by experience, it does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express. Frazier, 387 F.3d at 1261. "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* (quoting FRE 702 Notes of the Advisory Committee (2000)).

Mr. Smith not only fails to explain how his experience qualifies him to reach the conclusions in his reports, but he openly admits that he is not a patent expert. Further, he testified that he lacks any experience, education or pertinent knowledge related to patents. Essentially, there is absolutely no basis in knowledge, skill, experience, training, or education that qualifies Mr. Smith as an expert in design patents or design patent law. This is further evidenced by the fact that he makes significant errors both in his methodologies and in applying those to the facts, which will be discussed further in this paper *infra*. Mr. Smith's lack of

15

qualification as a patent expert should on its face be sufficient reason for the Court to refuse his opinion testimony as to those matters for which he has been proffered by the Defendant Mid-West (patent invalidity and patent infringement).

### 1.    *Mr. Smith <u>Admits</u> That He is Not a Patent Expert*

Mr. Smith has never testified as a patent expert before the Simpson cases. BS2 148:22 – 150:9.  Importantly, prior to the Simpson cases, Mr. Smith did not consider himself an expert in evaluating design patents or utility patents.  BS2 149:25 – 150: 14.  <u>At the time Defendant Mid-West retained Mr. Smith as an expert, he did not believe himself to be an expert in either design patent infringement or in design patent validity.</u>  BS2 150: 15 – 19.  Mr. Smith testified that he'd never worked with lawyers in connection with any patent disputes prior to the Simpson cases.  BS1 40:3 – 6.  In fact, the Simpson cases are Mr. Smith's <u>first ever attempt</u> at "evaluating" a design patent.  BS2 149:8 – 24.

The extent of Mr. Smith's expertise is in product design.  BS2 151:3 – 14. As indicated by his curriculum vitae, in his prior appearances as an expert witness, Mr. Smith testified only to product defects and "human factors"[11] in product

---

[11] Merriam-Webster defines "human factors" as "ergonomics." Merriam-Webster Online Dictionary. 2008. Merriam-Webster Online.  Retrieved July 31, 2008 http://www.merriam-webster.com/dictionary/human%factors Mr. Smith defines "ergonomics" as:  Ergonomics, according to the *Columbia Encyclopedia*, is "the engineering science concerned with the physical and

liability and/or personal injury cases.   **Exhibit C**, pgs. 9-11.  When counsel asked

Mr. Smith if he considered himself to be a <u>design patent</u> expert, he vaguely

responded that he is an "industrial designer of product expertise."  BS2 151:15 –

22.  When asked <u>specifically</u> if he considered himself to be an expert in any

matters related to design patent and patent infringement matters, he answered:

> **150**
> \*\*\*
> 20 **Q**. Are you an expert today in analyzing products
> 21 to determine if they infringed design
> 22 patents?
> 23 **A**. I am still not an attorney. I'm an
> 24 industrial designer and I have done what I
> 25 consider to be a thorough investigation of
> **151**
> 1 the 156 and the 321 patents. And that's as
> 2 far as, you know, I can claim at this point.
> 3 **Q**. Do you yourself consider yourself to be an
> 4 expert today in design patent and
> 5 infringement matters?
> 6 **A**. In all matters relating to design patent
> 7 infringement, is that what you're asking?
> 8 **Q**. In any matter relating to design pattern
> 9 infringement?
> 10 **A**. My expertise is in design and I'm applying
> 11 that to this -- these two particular patents.
> 12 And that's what I would claim. I -- I'm not

psychological relationship between machines and the people who use them.
**Exhibit A**, Page 7.

13 going to start a website and, you know,

14 proclaim myself an expert as a patent person.

15 **Q.** So if I understand your testimony, you

16 consider yourself to be a design expert,

17 right?

18 **A.** Yeah. I'm an industrial designer of product

19 expertise, yes.

20 **Q.** So you consider yourself to be an industrial

21 design expert, correct?

22 **A.** Yes.

23 **Q.** But you did not consider yourself at this

24 moment to be an expert in design patent

25 infringement questions, correct?

**152**

1 **A.** I don't consider my expertise in design

2 patents to extend beyond what I've examined

3 in the preparation of my reports.

4 **Q.** Well, let me ask you. Are you an

5 infringement expert or not?

6 **MR. HINSHAW:** Objection. Asked and

7 answered.

8 **A.** Beyond these cases? I mean, these are the

9 cases that I dealt with. So, that's all I

10 can claim expertise in. Or experience in at

11 this point.

12 **Q.** I understand that you've got experience now a

13 little bit from this case. But do you

14 believe that the experience you've gained in

15 this case renders you an expert in design

16 patent infringement matters?

17 **MR. HINSHAW:** Objection. To form and

18 foundation. Asked and answered.

19 **A.** Speaking in the abstract I wouldn't make that
20 claim.
21 **Q.** Why do you say speaking in the abstract?
22 **A.** Because the specifics I think I'm, you know,
23 versed in the 1 -- in the specifics
24 surrounding the 156 and the 321 patents.
25 **Q.** Do you mean by that that in general you're
**153**
1 not an expert in design patent matters?
2 **A.** I would not make a blanket statement like
3 that, yes.
4 **Q.** So I'm correcting that statement?
5 **A.** I would not make the statement that said I'm
6 an expert in all matters of design patents.
7 **Q.** Well, what areas of design patent
8 infringement are you an expert?
9 **A.** As I said, my expertise is -- is specific to
10 the investigation of the 156 and the 321
11 patents.
***

BS2 150:20 – 153:11.  Mr. Smith has not offered any explanation of how his

experience as an industrial designer at all qualifies him to offer an opinion, on

design patent infringement in this case.

Further, Mr. Smith again agrees that in general, he is not a design patent

invalidity expert.  BS2 154:1 – 11.  He claims however, to be an expert in the

Simpson cases, and in those cases <u>alone</u>.  BS2 154:6 – 16.  When questioned again

as to whether he considered himself an expert in the validity or invalidity of design

patents, Mr. Smith responded:

> **154**
> 12 **Q.** Well, aside from your involvement in this
> 13 case, in these two cases, do you otherwise
> 14 consider yourself an expert in the validity
> 15 or invalidity of design patents?
> 16 **A.** Beyond these cases, no.
> \*\*\*

BS2 154:12 – 16.

By Mr. Smith's own admission, he is not an expert in design patent matters

relevant to this case.  Despite the Defendant Mid-West's attempts to proffer him as

such, Mr. Smith himself knows that he is not a patent expert.  He was not an expert

before this case, he has not been an expert during this case, and he will not hold

himself out to be an expert in the future – all of his own admission.  On these facts

alone, the Court should not permit Mr. Smith to proffer any type of expert opinion

– whether in report or in testimony – as to design patent invalidity or infringement.

## 2. *Mr. Smith Lacks Any Experience, Education or Pertinent Knowledge Related to Patents*

Mr. Smith admits that prior to the Simpson cases, he lacked any experience

– or even any contact – with design patents or with design patent law.  BS1 38:19 –

39:4.   He  claimed  only  a  general  knowledge  common  to  "every  industrial

20

designer" that there are such things as design patents and utility patents. BS1 38:24 – 39:11. Beyond that general knowledge, Mr. Smith has never studied or noted the differences between design and utility patents. BS1 40:7 – 11. Mr. Smith has never taken any classes on design patents, on utility patents, or on patent law. BS1 39:12 – 14. Mr. Smith has never attended a symposium relating to design patents or patent law. BS1 39:15 – 17. Mr. Smith has never talked to, nor worked with, a United States Patent Office Examiner regarding any design patents. BS1 39:18 – 21. He has never filed a design patent himself; or been involved in any design patent filings. BS1 39:22 – 40:2. Other than with counsel for the Defendant Mid-West, Mr. Smith did not speak to anyone in person regarding design patent law prior to his first report on August 17th, 2007. BS1 127:16 – 21. In fact, nothing in Mr. Smith's extensive 14-page curriculum vitae indicates any experience, training, or education in design patent validity or design patent infringement. **Exhibit C**.

Mr. Smith admits that his only real knowledge about the validity or invalidity of design patents comes from the limited information provided to him by counsel for the Defendant Mid-West:

**153**

\*\*\*

12 **Q.** Would I be correct that the only thing you

21

13 know about design patent infringement

14 standards is what you learned from either

15 Mr. Hinshaw or from the materials that

16 Mr. Hinshaw sent you?

17 **A.** I -- I think that would be an accurate

18 statement.

\* \* \*

**154**

17 **Q.** And would I be correct in stating that

18 everything you know about the validity or

19 invalidity of design patents you gleaned from

20 things that Mr. Hinshaw communicated to you

21 or information that he forwarded to you?

22 **A.** In general. I mean, I -- I -- I think I read

23 a few cases that were referred to in Chisum I

24 read online. You know, the full text of the

25 cases. But that's the extent of my

**155**

1 background, yes.

2 **Q.** So in general I'm correct?

3 **A.** In general.

\* \* \*

BS2 153:12 – 18; 154:17 – 155:3.  Further, Mr. Smith admitted in his testimony

that other than the *Chisum on Patents* section copied and sent to him by Counsel

for Mid-West, he <u>did not do anything else to study patent law</u>.  BS1 125:23 –

127:1; 127:22 – 128:25.  Mr. Smith testified that he did not read any of the case

law referenced in the section of *Chisum on Patents* treatise supplied to him by

counsel for Defendant Mid-West.  BS1 136:23 – 137:10.  He admitted that he has never read the seminal design patent infringement case <u>Gorham v. White,</u> (prior to his report).  BS1 137:11 – 138:15.  He stated that in addition to the materials sent to him by counsel for Defendant Mid-West, he had "general discussions" about how design patent law worked during phone calls with counsel for Defendant Mid-West, totaling less than an hour.  BS1 126:15 – 127:15.

Mr. Smith's utter lack of experience, education or pertinent knowledge related to patents is explicitly apparent from the record (and implicit in his misunderstanding and misapplication of patent infringement and patent invalidity methodologies, as discussed *infra*).  Even more disturbing than his lack of experience is that he purports to be an expert <u>only in the Simpson cases</u>.  He admits he was not a patent expert before being retained in the present case, and claims that he will not hold himself out to be one after.  It is an affront that Defendant Mid-West even attempted to proffer an expert with no experience and no education <u>who they "educated" on patent law</u> themselves.  To the Court it should be apparent that even with the preparation of Mr. Smith by Defendant Mid-West, he is still lacking the qualifications of an educated, experienced design patent expert.

Mr. Smith is simply not a qualified expert to testify in the Simpson cases.  First and foremost, he admits he is not a patent expert.  Secondly, he admits that he

lacks any prior patent experience or patent education.  His limited education – the crash-course on design patent law given to him by the Defendant's attorney – should hardly be considered enough to render Mr. Smith an expert on design patent infringement and validity.  One cannot become an instant expert on a topic after simply reading excerpts from a treatise on the topic. For example, a patent attorney with no industrial design experience could not offer expert opinions relating to industrial design principles after simply reading a book or two on "human factors". In the same vein, Mr. Smith—an industrial designer with *no patent experience*— cannot be permitted to proffer expert opinions on design patent matters after merely studying a treatise on design patent law.

If this Court finds that Mr. Smith's crash-course in design patent law is enough to render him an expert in design patent infringement and validity matters, then almost *anyone* can be a design patent expert by simply reading the same materials.  Furthermore, without any experience, Mr. Smith lacks any context in which to apply the little knowledge that he did acquire in preparing for the present case.   In the end, there are several ways that Mr. Smith illustrates for the Court that he is simply not qualified as an expert in this case.  Given all the evidence, the Court should preclude Mr. Smith from testifying as to patent invalidity and

infringement at trial, and should exclude his many reports from being admitted into evidence.

## B. Mr. Smith's Methodologies are Unreliable

As Frazier states, an expert's methodology by which he reaches his conclusions should be reliable, as determined by the sort of inquiry mandated in Daubert. Frazier, 387 F.3d at 1260. Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors set forth in Daubert are:

(1) whether the expert's technique or theory can be or has been tested--that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

(2) whether the technique or theory has been subject to peer review and publication;

(3) the known or potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards and controls; *and*

(5) whether the technique or theory has been generally accepted in the scientific community.

Daubert, 509 U.S. at 594.   The Court in Kumho held that these factors are applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue."   Kumho Tire, 526 U.S. at 149.

Mr. Smith's deposition testimony reveals that in many cases he lacks the proper understanding of the methodologies approved by courts for design patent invalidity and infringement.  But even if that is not enough for the Court to prevent Mr. Smith from testifying as a patent expert, Mr. Smith's fundamental lack of understanding of the accepted methodologies for evaluating design patent infringement causes Mr. Smith to implement erroneous methodologies in forming his opinions, as expressed in his '156 and '321 design patent reports.  Therefore, it is not only the testimony of Mr. Smith that should be excluded, but also his reports as well, as Mr. Smith's lack of understanding, creation of new methodologies and even the misapplication of accepted patent law methodologies have created serious flaws in both his testimony and reports.

### 1.   *The Appropriate Standard for Design Patent Infringement*

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent."   Arminak & Assocs. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007)(citing Elmer v. ICC Fabricating, Inc., 67 F.3d

1571, 1577 (Fed. Cir. 1995)).  The elements of design patent infringement are set forth at 35 U.S.C. § 289, which states:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $ 250, recoverable in any United States district court having jurisdiction over the parties.

35 U.S.C. § 289.

"Similar to the infringement analysis of a utility patent, infringement of a design patent is evaluated in a two-step process. First, the court must construe the claims of the design patent to determine their meaning and scope."  Arminak, 501 F.3d at 1319 (citing OddzOn v. Just Toys, 122 F.3d at 1404-05). "Design patents typically are claimed as shown in drawings. Claim construction by a court is adapted accordingly."  Arminak 501 F.3d at 1319 (*citing* Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116 (Fed. Cir. 1998)).  "The scope of the claim of a patented design 'encompasses its visual appearance as a

whole, and in particular the visual impression it creates.'"  Arminak 501 F.3d at 1319-1320 (quoting Contessa v. Conagra, 282 F.3d at 1376).

Second, the court must compare the construed claims to the accused design. Arminak 501 F.3d at 1320 (citing Elmer v. ICC, 67 F.3d at 1577).  The comparison of the patented and accused designs involves two separate tests, both of which must be satisfied to find infringement: the "ordinary observer" test and the "point of novelty" test.  Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1383 (Fed. Cir. 2004).  The "ordinary observer" test was articulated by the United States Supreme Court in Gorham v. White, 81 U.S. at 528, which held that: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

In a separate and distinct inquiry, the "point of novelty" test requires proof that the accused design appropriated the novelty which distinguishes the patented design from the prior art.  Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984).  Both the ordinary observer test and point of novelty test are factual inquiries.  Bernhardt, 386 F.3d at 1383.  The term "novelty" is a term of art in patent law and has always been equated with an "anticipation" standard—

meaning that an invention is not anticipated, and therefore is novel, as long as the

invention comprises any physical differences from all previous inventions

(comparasingly).  In comparing the invention with the prior art for novelty, a single

prior art reference must contain every feature of the invention in order to find the

invention is anticipated (and therefore lacking novelty).  Therefore, as long as an

invention is not pre-dated by another <u>single</u> reference having the exact same

physical characteristics, the invention is said to be "novel."

### 2. *Mr. Smith's Incorrect Application of the Standard for Design Patent Infringement*

Mr. Smith testified that the following is his understanding of the standard for

evaluating design patent infringement:

```
 6

***

10  Q.  All right.  If you would, describe for me
11      your understanding of how someone should go
12      about evaluating a product to see if it
13      infringes a design patent.
14  A.  Well, the first thing that you would do is --
15      is look at the functional elements of the
16      product and determine what those are.  You
17      also need to look at the ordinary observer
18      and whether or not they would confuse the
19      design elements, the ornamental elements of
20      the patent.  Then you also need to look at
21      prior art to determine whether the features
```

```
22      that are being claimed were -- can be found
23      in prior art.
***
```

BS1 6:10 – 23.

However, as explained above, the first part of any design infringement analysis is to construe the claim of the design patent. Mr. Smith has failed to propose a claim construction for either the '156 patent or the '321 patent and has failed to even recognize claim construction as part of the infringement inquiry. In fact, even Defendant Mid-West agrees that the threshold issue in the design patent infringement inquiry is to construe the claim of the design patent.[12]

Second, the construed claim must be compared to the accused products—the Mid-West Bay Isle wicker kennels. It is under this prong of the inquiry that an infringement inquiry would address the "ordinary observer" test and the "point of novelty" test. The "point of novelty" test undertakes to determine whether the accused design (Defendant Mid-West's *Bay Isle* kennels) appropriated the novelty that distinguished the patented design from the prior art—not whether any features being claimed by the Plaintiff can be found in the prior art as purported by Mr. Smith. However, Mr. Smith failed to first construe the claim of the '156 Patent or to adopt the claim construction proposed by Plaintiff's expert witness, Mr. Robert

---

[12] See pages 33-34 of Defendant Mid-West Metal's recently filed Summary Judgment Motion.

Anders. Therefore, it is impossible for Mr. Smith to employ the correct test for design patent infringement since he skipped the threshold step of claim construction.   Mr. Smith simply does not fully understand the process and proper methodologies for evaluating design patent infringement.

More importantly, when considering the "point of novelty" test, Mr. Smith shows his lack of knowledge and understanding by inappropriately combining <u>multiple</u> references to meet a single point of <u>novelty</u> in the present cases, without citing any support for using this methodology.  In his own words:

```
26
***
13  Q.  And in some instances, you relied on a
14      combination of certain references to meet a
15      single point of novelty, correct?
16  A.  Yes.
17  Q.  And where did you get the idea that it would
18      be permissible or appropriate to rely on
19      multiple references to compare with a single
20      point of novelty?
21  A.  Well, as a designer, when you are looking at
22      what's available in the field as you're
23      developing a design, you look at a wide
24      variety of things.  And so it can be a
25      combination of characteristics, but it's
27
 1      pre-existing.
 2  Q.  But in this instance, we're talking about
 3      your application of a legal test.
```

31

 4  **A.**  Right.

 5  **Q.**  So at some point, you came to the

 6      understanding that it was permissible or

 7      appropriate to combine multiple references in

 8      applying that legal test, correct?

 9  **A.**  Yes.

10  **Q.**  And where did you get the idea that applying

11      that particular legal test, the point of

12      novelty test, that it would be appropriate or

13      proper to combine references?

14  **A.**  I'm not sure.  I'm not sure.  I mean, I

15      understand the words you're using, but I'm

16      not sure what you're asking.

17  **Q.**  Well, did you get the idea that it would be

18      appropriate to combine references in applying

19      the point of novelty test from something that

20      Mr. Hinshaw told you?

21  **A.**  No.

22  **Q.**  Did you get the idea that it would be proper

23      or appropriate to combine references in

24      applying the point of novelty test from

25      something you read?

**28**

 1  **A.**  No.

 2  **Q.**  Did you get the idea that it would be

 3      appropriate or proper to combine references

 4      in applying the point of novelty test from

 5      something outside of your experience in

 6      connection with this lawsuit?

 7  **A.**  No.

 8  **Q.**  Well, what is the source of your

 9      understanding that it would be appropriate or

32

```
10      permissible to combine references in applying
11      the point of novelty test?
12   A. I don't know that I can identify a source.
13   Q. Are you aware of any court case that has
14      stated that that would be appropriate?
15   A. No.
```

BS1 26:13– 28:15.  He of course misapplies the test in both reports by combining

<u>multiple</u> prior art references for a single point of novelty.  This methodology – the

proposition that multiple references may be combined to meet an individual point

of novelty – has absolutely <u>no basis in any patent law jurisprudence</u>.   It is

unsupported and unsubstantiated anywhere in Mr. Smith's reports.  **Exhibit A**, pgs.

8-15, 16-18; **Exhibit D**, pgs. 2-17; **Exhibit E**, pgs. 22-26.   How can the Court

accept Mr. Smith as an expert when he employs a methodology that is not

supported in law and when he does not even know where he got the idea that this

methodology would be correct?

　　Simply put, the methodologies adopted and implemented by Mr. Smith are

inaccurate and unreliable.   As shown above, important aspects of Mr. Smith's

methodologies have not been validated in any objective sense, nor have they been

adopted by any court.  Mr. Smith cannot even identify a single source that supports

some of Mr. Smith's theories on design patent infringement evaluation.  Therefore,

under <u>Daubert, Kumho Tire</u> and <u>Frazier</u>[13], this Court should find that the methodologies employed by Mr. Smith in considering whether the Mid-West Bay Isle kennels infringe the '156 Patent are unreliable and of no value to the trier of fact.

### 3.    *Mr. Smith Admits There are Material Errors in His Reports*

Mr. Smith's inexperience with design patent law has manifested in two very material errors in his reports.  First, Mr. Smith admits that his report is absolutely wrong with regards to his analysis of design patent validity:

```
152
***
22  Q.  Let me ask it another way.  Isn't it true
23      that to evaluate whether the 156 patent is
24      anticipated by a prior art reference, you
25      simply have to look at the 156 patent and the
153
 1      prior art reference, not Mr. Anders'
 2      assertion of any points -- of any points of
 3      novelty, correct?
 4  A.  I -- I -- that is my understanding.
 5  Q.  So if all we have to do to evaluate whether a
 6      patent is anticipated is compare the patent
 7      drawings with the prior art, isn't it true
 8      that your first statement on page 16 is
 9      incorrect?
```

---

[13] <u>Daubert v. Merrell</u>, 509 U.S. at 589; <u>Kumho Tire</u>, 526 U.S. at 149; <u>United States v. Frazier</u>, 387 F.3d at 1260.

```
10  A.   I do not believe that the designs in Figures
11       18, 36, and 37 could be said to fully
12       anticipate the 156 design.
13  Q.   So that first sentence is wrong, correct?
14  A.   Yes.
***
```

BS1 152:22 – 153:14.   Only after being examined by Plaintiff's counsel and having been explained the proper inquiry was Mr. Smith able to realize that his report contained these major errors.   BS1 149:24 – 150:21.   In response to this admission, Mr. Smith noted that he would likely need to amend his report to remove these major errors.  *Id.*  However, these errors were never corrected by Mr. Smith.

Second, Mr. Smith admits his report is wrong in regards to the <u>Gorham</u> test:

```
156
***
 4  Q.   And to see whether -- under the Gorham Test,
 5       the prior art that you pointed out in these
 6       three paragraphs -- whether that prior art is
 7       substantially the same, you would compare the
 8       prior art with the drawings of the 156
 9       patent, correct?
10  A.   That's my understanding.
11  Q.   So is any of these three prior art
12       references, which you identified as Figures
13       18, 36, and 37, in your report of Exhibit
14       78 -- are any of those references
15       substantially the same under the Gorham Test
```

35

```
16        as what's shown in the 156 patent drawings?
17   A.   I do not believe that they are.
18   Q.   So this last sentence in the -- in this third
19        paragraph in which you say, Moreover, under
20        the Gorham Test, an ordinary observer would
21        view the overall designs as substantially the
22        same, is incorrect, right?
23   A.   That's correct.
***
```

BS1 156:4 – 23.

Again, only after being educated by Plaintiff's counsel during his deposition was Mr. Smith able to recognize that his application of the Gorham standard was incorrect. Similarly, these errors still remain in Mr. Smith's reports.

These errors are not small matters -- they go to the very heart of the matter. An "expert" who admits he got the infringement and validity questions wrong, is no expert.

### C. Mr. Smith's Expert Testimony Will Not Assist the Trier of Fact

The Daubert Court recognized that a district court's role as gatekeeper is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." Daubert, 509 U.S. at 595 (internal quotations omitted). Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are "of a

type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  <u>Frazier</u>, 387 F.3d at 1260 (citing FRE 703).

In the instant case, there is very little that Mr. Smith can offer in the way of testimony that would assist the trier of fact.  He has been proffered as an expert in patent invalidity and infringement, but really his area of expertise is limited to industrial design matters.  Mr. Smith has nothing to offer the jury in the realm of patent law and his opinions regarding design patent infringement and validity are outside his area of expertise.  He does not even consider himself an expert of such. Indeed his deposition testimony and reports illustrate a lack of education, experience, and a serious lack of knowledge of patent law (and design patent law in particular) that render Mr. Smith's testimony misinformed, misconstrued, unsupported and ultimately, confusing.  In addition, Mr. Smith himself readily admits that there are fundamental errors in his reports.  These types of errors only serve to confuse the jury.  In fact, there is no positive value in Mr. Smith's proffered testimony on patent invalidity and infringement that would assist the trier of fact.

Federal Rule of Evidence 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Fed. R. Evid. 403.  As the

<u>Daubert</u> Court observed, "the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses" due to the difficulty if evaluating expert evidence. <u>Daubert</u>, 509 U.S. at 595 (internal quotations omitted).

Under the auspices of the Court's <u>Daubert</u> gatekeeping function and under both FRE 702 and FRE 403, it is both proper and prudent for this Court to exclude Mr. Smith's patent opinion testimony, including his reports.  Indeed, Mr. Smith's existing testimony and report are so flawed in their understanding of the law, the application of methodologies for assessing design patent invalidity and infringement, and their ultimate conclusions that the trier of fact will only be confused and misled Mr. Smith's testimony.  Should the Court allow Mr. Smith to testify, it will greatly prejudice the jury against the competent testimony evidence cloud their understanding of design patents in general.

## IV.    <u>CONCLUSION</u>

The Court should exclude Mr. Smith's expert testimony, written and oral, as to patent invalidity and infringement.  Mr. Smith's written reports and testimony clearly fail all elements of the combined <u>Daubert</u>, <u>Kumho Tire,</u> and <u>Frazier</u>

tests[14]:1) Mr. Smith is not qualified to testify as to patent invalidity or patent infringement because he admits that he is not a patent expert, lacks any experience, education or pertinent knowledge related to patents; 2) Mr. Smith's methodologies are unreliable, including his incorrect understanding and application of the standards for both design patent invalidity and infringement, and also his admission that there are material errors in his reports; 3) Mr. Smith's testimony will not assist the trier of fact.

Moreover, the Court should exclude Mr. Smith's from testifying as the Defendant's proffered expert on patent invalidity and infringement because the probative value of his testimony, if any, is seriously outweighed by the likelihood that it will cause confusion of the issues, mislead the jury, and risk unfair prejudice to the Plaintiff.

---

[14] Daubert v. Merrell, 509 U.S. at 589; Kumho Tire, 526 U.S. at 149; United States v. Frazier, 387 F.3d at 1260.  See also discussion *supra* at Section III.

Dated this 1st day of August, 2008.

Respectfully submitted,


/Arthur A. Gardner/
Arthur A. Gardner
Counsel for Simpson Ventures, Inc.
Georgia Bar No. 283,995
**Gardner, Groff,**
**Greenwald & Villanueva, PC**
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Telephone (770) 984-2300
Facsimile: (770) 984-0098
Email:  agardner@gardnergroff.com

Joseph W. Staley
Counsel for Simpson Ventures, Inc.
Georgia Bar No. 142,571
**Gardner, Groff,**
**Greenwald & Villanueva, PC**
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Telephone (770) 984-2300
Facsimile: (770) 984-0098
Email:  jstaley@gardnergroff.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008, I electronically filed the foregoing PLAINTIFF SIMPSON VENTURES, INC.'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DEFENDANT'S EXPERT, BRET H. SMITH UNDER *DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.*, with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

James M. Hinshaw
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
Pro Hac Vice

Brett A. Ross
Carr Allison
100 Vestavia Parkway
Birmingham, Alabama  35216
(205) 822-2006

*Attorneys for Defendant*

　__/s/ Arthur A Gardner_____

Arthur A. Gardner
GA Bar No. 283,995
Email:  agardner@gardnergroff.com
GARDNER GROFF, GREENWALD
& VILLANUEVA, P.C.
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Tel:  (770) 984-2300
Fax:  (770) 984-0098
*Attorneys for Plaintiff*