# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| SIMPSON VENTURES, INC., | ) | |
|        Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MID-WEST METAL | ) | |
| PRODUCTS | ) | |
| COMPANY, INC. | ) | |
|        Defendant. | ) | |
| ——————————— | ) | Case No. 06-cv-00901-WKW-VPM |
| | ) | |
| MID-WEST METAL | ) | |
| PRODUCTS | ) | |
| COMPANY, INC., | ) | |
|        Counterclaimant, | ) | |
| v. | ) | |
| | ) | |
| SIMPSON VENTURES, INC., | ) | |
|        Counterdefendant. | ) | |
| ——————————— | ) | |

### PLAINTIFF SIMPSON VENTURES, INC.'S
### STATEMENT OF MATERIAL FACTS NOT GENUINELY
### IN DISPUTE, FILED IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, Simpson Ventures, Inc. (hereinafter "Simpson")

and files this Statement of Material Facts Not Genuinely in Dispute, in Support of

its Motion for Partial Summary Judgment under FRCP 56(a).

## <u>MATERIAL FACTS NOT GENUINELY IN DISPUTE</u>

1.    Mr. Jeffrey Simpson conceived of a wicker pet residence that addressed a need for an indoor pet containment device that would look good inside the home and would blend with various interior decors.   The product he developed used a resin "wicker" that looked like natural wicker, but had the added benefits of being easy to clean and resistant to absorbing liquids and odors.

2.    Mr. Simpson applied for a United States design patent for his wicker-look pet residence on June 3, 2002.  *US Design Patent Number 483,156, Exhibit A*

3.    The United States Patent and Trademark Office ultimately allowed the patent application to issue as a United States design patent.   *Exhibit A*

4.    The Simpson patent application issued as United States Design Patent Number 483,156 (the '156 Patent) on December 3, 2003.  *Exhibit A*

5.    The '156 Patent is owned by Mr. Jeffrey Simpson, and is licensed to Simpson Ventures, Inc.  In particular, Simpson Ventures holds an exclusive license with a right to sue for infringement and collect damages.  *Exhibit A*

6.    Under 35 U.S.C. § 282 the '156 Patent is presumed valid and it has not been declared invalid by this or any other court.  35 U.S.C. § 282.

7.    The '156 Patent shows feet at the bottom of the pet home.  The feet function to support the pet home upon the floor.  *Exhibit A; Def.'s SJ Brief, p37.*

8.      Mid-West's purported expert, Mr. Bret Smith, stated in his expert report that the feet are functional. *Bret Smith Expert Report, pg. 6.*

9.      The '156 Patent shows a non-covered pivoting door on the front of the pet home.   The door functions to enable the pet to go into and out of the pet home. *Exhibit A; ; Def.'s SJ Brief, p38.*

10.     Mid-West's purported expert, Mr. Bret Smith, stated in his expert report that the door is functional. *Bret Smith Expert Report, pg. 6.*

11.     The '156 Patent shows a latch associated with the non-covered pivoting door on the front of the pet home.   The latch functions to fasten the door in place to secure the pet in the pet home. *Exhibit A; Def.'s SJ Brief, pp39,40.*

12.     Mid-West's purported expert, Mr. Bret Smith, stated in his expert report that the latch is functional. *Bret Smith Expert Report, pg. 6.*

13.     The '156 Patent shows non-covered windows or openings located on the sides and back of the pet home.   The non-covered windows or openings function to enable the pet to see out of the pet home, to allow the pet owner to see into the pet home, and provide ventilation. *Exhibit A; Def.'s SJ Brief, p40.*

14.     Mid-West's purported expert, Mr. Bret Smith, stated in his expert report that the windows are functional. *Bret Smith Expert Report, pg. 6.*

15.   The '156 Patent shows mechanical features along the edges and corners of the pet home, including fasteners and links. The mechanical features function to hold the structure together. *Exhibit A*

16.   The '156 Patent shows a tray or bottom pan along the lower part of the pet home. The tray or bottom pan functions to collect dirt or debris. *Exhibit A*

17.   The '156 Patent shows a tray latch associated with the tray or bottom pan. The tray latch functions to secure the tray or bottom pan in place. *Exhibit A*

18.   The '156 Patent shows a framework. The framework provides structural rigidity for the pet home and provides a base to which the woven wicker-look material is applied. *Exhibit A*

19.   Simpson Ventures began marketing its wicker-look (wicker) pet residence according to the design shown in the '156 Patent in 2002. *Deposition of Jeffrey Simpson June 10 pg. 134:9-13*

20.   After being introduced to the market, the Simpson Ventures wicker pet residence garnered praise from consumers and resellers for the quality of its design and appearance. *Donna Belanchia Deposition pg. 24-27*

21.   Prior to the Simpson Ventures wicker pet residence being introduced to the market in August of 2002, there had not been an indoor pet containment device on the market having the appearance of wicker. *Deposition of Jeffrey Simpson June 10 pg. 134:9-13*

22.   By the summer of 2003, sales of the Simpson Ventures wicker pet residence had gone from zero sales to sales of approximately 950 units per month. *Plaintiff's Response to Interrogatory No. #18.*

23.   After Simpson Ventures introduced its wicker pet residence, others entered the market for the first time with similar looking products.  To date, there have been several entities that have introduced wicker indoor pet containment devices with a similar appearance to that shown in the '156 Patent and similar to the Simpson Ventures wicker pet residence. *Deposition of Jeffrey Simpson June 10 53:4-62:5*

24.   Simpson Ventures has asserted its intellectual property rights against at least some of these other entities that have marketed similar looking wicker pet residences.  Simpson Ventures has been successful in forcing all entities it has approached except for Mid-West to stop selling the similar looking wicker pet residences.  *Deposition of Jeffrey Simpson June 10 53:4-62:5*

25.   Prior to bringing its Bay Isle product to market, employees of Mid-West ordered at least two samples of the Simpson Ventures wicker pet residences. Upon receiving the Simpson Ventures wicker pet residences, Mid-West employees inspected and evaluated the Simpson Ventures wicker pet residence.  *Defendant Mid-West Initial Disclosure; Defendant Mid-West 1st Answer to Pl 1st Int #17*

26.   Mid-West subsequently forwarded photos and/or a part of Simpson's pet home design to Mid-West's Chinese manufacturer.  *Deposition Exhibit No. 38*

5

27.  After inspecting and evaluating the Simpson Ventures wicker pet residences, Mid-West began producing its "Bay Isle" line of wicker-look pet residences in a manufacturing facility in China.  *Defendant 1st Res to Pl 1st Int #13; Deposition of SK pg. 23:14-27:9*

28.  Sometime during the year 2003, Mid-West began importing and selling its Bay Isle line of wicker-look pet residences in the United States.  *Exhibit email  Exhibit 12*

29.  The Mid-West Bay Isle line of wicker-look pet residences have a box-like overall shape, with simulated woven wicker covering the top and most of the two sides and the back, the sides and the back having rectangular windows or openings that are not covered in simulated woven wicker, and a front having a see-through door that is framed on the top and two sides by simulated woven wicker.  *Ex. B*; *Defendant SJ Brief pp19-21*

30.  The '156 Patent shows a design of a wicker-look pet residence having a box-like overall shape, with simulated woven wicker covering the top and most of the two sides and the back, the sides and the back having rectangular windows or openings that are not covered in simulated woven wicker, and a front having a see-through door that is framed on the top and two sides by simulated woven wicker.  *Exhibit A Design Patent*

31.  Ms. Laurie Taylor is an employee of PetSmart, Inc., a reseller of the Mid-West Bay Isle wicker-look pet residence products.  Ms. Taylor testified that she has substantial experience in marketing pet products to consumers.

*Deposition of Laurie Taylor pg.7:9-22;pg. 9:13-11:11;pg.19:1-19:7    ; Deposition of SK pg. 76:9-80:1*

32.    Ms. Taylor testified that at least some consumers would likely be confused between the Mid-West Bay Isle wicker-look pet residence and the design of the '156 Patent. *Deposition of Laurie Taylor pg.125:18-128:15.*

33.    Ms. Taylor testified that consumers would be more likely to be confused between the Mid-West Bay Isle wicker-look pet residence and the design of the '156 Patent if they were not making a side-by-side comparison between the two designs. *ld*

34.    Ms. Taylor further testified that as a consumer even she herself might be confused between two designs, depending upon how much time she took to compare the two designs. *Deposition of Laurie Taylor pg. 96:20-97:7*

35.    Mr. Greg Mantle is an employee of PetSmart, Inc., a reseller of the Mid-West Bay Isle wicker pet residence products.  Mr. Mantle testified that he has substantial experience in marketing pet products to consumers. *Deposition of Greg Mantle pg. 11:8-12:18*

36.    Mr. Mantle testified that at least some consumers would likely be confused between the Mid-West Bay Isle wicker-look pet residence and the design of the '156 Patent. *Deposition of Greg Mantle pg. 29:17-33:6*

37.    Mr. Mantle testified that consumers would be more likely to be confused between the Mid-West Bay Isle wicker-look pet residence and the design of

the '156 Patent if they were not making a side-by-side comparison between the two designs. *Deposition of Greg Mantle pg. 56:19-57:5*

38.   Mr. Mantle testified that the patented design and the Bay Isle wicker-look crates accused of infringement have similar overall appearances, stating that "there is a lot of general similarity". *Mantle Depo., Page 55.*

39.   Mr. Mantle testified that the patented design and the Bay Isle wicker-look crate design have the same or similar silhouette. *Id.*

40.   Mr. Mantle further testified that other than some detailed differences in the corners and elsewhere, as between the patented design and the Bay Isle wicker-look crates "the general shape and overall feel of it is very similar". *Mantle Depo., Pages 55-56.*

41.   When asked whether based on what he knows about consumers of pet products he thought that it is likely that at least some consumers purchasing the Bay Isle wicker-look crates could mistake that design for the patented design, Mr. Mantle testified "I would think so, yes". *Mantle Depo., Page 56.*

*42.*   Mr. Mantle testified that unless the Bay Isle product and the patented design were side by side, he doubted that consumers would be able to distinguish one from the other, stating "you know, I don't see a whole lot of features to jump out at me as making one unique over the other." *Mantle Depo., Pages 56-57.*

43.  Ms. Donna Belanchia testified that after Mid-West introduced its Bay Isle line of wicker-look pet residences, Simspon Ventures has experienced a number of instances of consumer confusion, such as consumers of the Mid-West Bay Isle product contacting Simpson Ventures for replacement parts or warranty issues. *Donna Belanchia Depo., pp69-79.*

44.  Mr. Jeffrey Simpson also testified that after Mid-West introduced its Bay Isle line of wicker-look pet residences, Simspon Ventures has experienced a number of instances of consumer confusion, such as consumers of the Mid-West Bay Isle product contacting Simpson Ventures for replacement parts or warranty issues. *Deposition of Jeffrey Simpson June 9 58:18-21.*

*45.*  At least one dealer affiliated with Simpson Ventures saw Mid-West's sales flyer announcing the introduction of the Bay Isle products and, apparently believing that Simpson Ventures may have started marketing its product through Mid-West, contacted Mr. Simpson to ask if he had decided to market his Pet Home through Mid-West. *Deposition of Jeffrey Simpson June 9 pg 66:3-14*

46.  Mid-West has adopted as its legal position regarding its noninfringement and invalidity defenses by incorporating the testimony and reports of their proffered expert witness, Mr. Bret Smith. *See, Interrogatory Response(s) from Mid-West, attached hereto as Exhibits G, I.*

47. Thus, rather than answering certain contention interrogatories directly, Mid-West has responded by incorporating the testimony and reports of its proposed liability expert Mr. Brett Smith.  Id.

48. As a result of incorporating by reference the reports and testimony of Mr. Bret Smith in its discovery responses, Mid-West has answered that on at least the issues for which Mr. Smith's reports and testimony has been incorporated by reference, Mr. Smith speaks for Mid-West.  *Id.*

49. During his deposition, Mr. Smith testified that the Mid-West Bay Isle products look more like the patented design than do the three prior art references he considered closest to the design patented in the'156 Patent. *Smith Depo Vol I, pp 69-74, 143*.  Thus, according to Mr. Smith's testimony and Mid-West's discovery responses, it is the contention of Mid-West that the Bay Isle products accused of infringement look more like the patented design than does the closest prior art reference. *Id*.

50. Mid-West has come forward with no survey evidence to support its contention that, under Gorham, there is no likelihood of ordinary observers being confused between the patented design and the Bay Isle products.

51. Mid-West has failed to identify a single reference that Mid-West contends anticipates Plaintiff Simpson's patented design.

52. There is no single prior art reference that, by itself, shows every feature of Plaintiff Simpson's patented design. *Smith Depo Vol I, pp 150-152*.

53.   During his deposition, Defendant's purported expert, Mr. Bret Smith, identified three prior references as the pieces of prior art that have the most similar appearances to the design shown in the '156 Patent.  However, Mr. Smith then testified that none of designs in these three prior art references are substantially the same as that shown in the '156 Patent. *Smith Depo Vol I, p 153*.

54.   The Mid-West Bay Isle design looks more like the patented design in the '156 Patent than does any single known prior art reference. *Smith Depo Vol I, pp 69-74*.

55.   Mid-West has not indentified any point, or points, of novelty that distinguish the '156 Patent from the prior art.

56.   Simpson has identified six points of novelty that is contends distinguishes the '156 Patent from the known prior art.

57.   Mid-West has not identified any single prior art reference that encompasses one or more of the six points of novelty that have been identified by Simpson. *Smith Depo Vol I, pp 150-152*

58.   Mid-West has not identified any single reference that it contends is a primary reference. *MW SJ Brief, p75*.

59.   No primary reference exists within the known prior art. *Id*.

Dated this 11th day of August, 2008.

Respectfully submitted,


/Arthur A. Gardner/
Arthur A. Gardner
Counsel for Simpson Ventures, Inc.
Georgia Bar No. 283,995
**Gardner, Groff,**
**Greenwald & Villanueva, PC**
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Telephone (770) 984-2300
Facsimile: (770) 984-0098
Email:  agardner@gardnergroff.com

Joseph W. Staley
Counsel for Simpson Ventures, Inc.
Georgia Bar No. 142,571
**Gardner, Groff,**
**Greenwald & Villanueva, PC**
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Telephone (770) 984-2300
Facsimile: (770) 984-0098
Email:  jstaley@gardnergroff.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008, I electronically filed the foregoing PLAINTIFF SIMPSON VENTURES, INC.'S STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE, with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

> James M. Hinshaw
> Bingham McHale LLP
> 2700 Market Tower
> 10 W. Market Street
> Indianapolis, IN  46204-4900
> (317) 635-8900
> Pro Hac Vice
>
> Brett A. Ross
> Carr Allison
> 100 Vestavia Parkway
> Birmingham, Alabama  35216
> (205) 822-2006

> *Attorneys for Defendant*

\_\_/s/ Arthur A Gardner_____

Arthur A. Gardner
GA Bar No. 283,995
Email:  agardner@gardnergroff.com
GARDNER GROFF, GREENWALD
& VILLANUEVA, P.C.
2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
Tel:  (770) 984-2300
Fax:  (770) 984-0098
*Attorneys for Plaintiff*